SUSAN R. EASTMAN *vs.* ST. ANTHONY FALLS WATER-POWER COMPANY.

February 27, 1890.

**Riparian Owner—Deed of Water-Front and Land under Water—Construction—Evidence.**—The defendant, in pursuance of its charter, erected dams in the Mississippi river at the falls of St. Anthony, and flowed land subsequently acquired by the grantors of the plaintiff, and afterwards procured from them a deed by which the latter granted and conveyed to the defendant "all the entire water-front, land under water, easements, and privileges in the Mississippi river upon, about, or appurtenant to," the government lot in question.   At the time of the execution of the deed, the shore of the land above low-water mark was overflowed and covered with water, as it had been for many years in the ordinary stage of the river.   *Held* that, in order to determine what land

passed by the deed, it was competent to receive evidence of the situation of the premises and condition of the river resulting from the operation of the dams at the date of the deed, and that a provision in the deed for additional flowage was not inconsistent with an intention to grant the fee of so much of the shore above low-water mark as was covered by water so raised by the dams.

Same—Description in Tax-Deed.—The land in question, claimed by the defendant, being under water, and extending from low-water mark to the margin of the river or water-line as permanently raised by the dams, *held* not to be included in the description of a tax-deed issued to the plaintiff embracing her land to the margin of the river, such description being generally of "land lying between Park St., in the plat of Nicollet island, and the Mississippi river."

Same—Double Taxation.—Where a general description in such deed may be satisfied by applying it to the land owned by one party, in whose name it is assessed, it will not be extended so as to embrace the land of another, particularly if it would lead to double taxation.

Action brought in the district court for Hennepin county, to determine defendant's adverse claim to "all that part of government lot 1, in section 23, town 29 north, range 24 west, commonly known as 'Nicollet Island,' lying northwesterly from the highway across said Nicollet Island known as Bridge street, and between Park street and the Mississippi river, according to the plat of 'Nicollet Island,' on file," etc.,—the plaintiff alleging title and possession in herself. The action was tried by *Lochren,* J., who ordered judgment for defendant, which was entered, and from which the plaintiff appeals.

*E. C. Chatfield, D. A. Secombe,* and *M. B. Koon,* for appellant.

*Benton & Roberts* and *E. M. Wilson,* for respondent.

VANDERBURGH, J.[1]  1. The defendant corporation has improved the water-power at and above the falls of St. Anthony, in pursuance of its charter, so as to cause the water to set back upon the shore of Nicollet island, which is situated in the Mississippi river, a short distance above the falls.  The facts are particularly set forth in the findings of the court, from which it appears "that for many years prior to the 20th day of May, 1867, the defendant had maintained, and

[1] Gilfillan, C. J., was absent and took no part in this decision.

has up to this time continued to maintain, dams in the Mississippi river below Nicollet island, near the falls, which at the date referred to, and at all other times since, have raised and still raise the water about and upon the shores of said Nicollet island to the height of six feet perpendicular above low-water mark, and flow the shore and banks of said island to a considerable distance above low-water mark, according to the slope more or less of such shore and bank, and did so flow the same at that date, and had for many years prior thereto, forming the mill-pond of the defendant." On that day, the remote grantors of the plaintiff granted and conveyed to the defendant, its successors and assigns, certain real estate, easements, and privileges, described in the deed, which was soon after recorded, as follows: "All the entire water-front, land under water, and rights to grants under water, easements, water-power, and privileges in the Mississippi river, upon, about, of, or appurtenant or belonging to, or connected with, lot number one, (1,) in section number twenty-three, (23,) of township number twenty-nine (29) north, of range number twenty-four (24) west, commonly known as ʻ Nicollet Island,' and lying above the falls of St. Anthony, to the centre of the channels on each side of said island, together with the right to the free use and occupation of, and the right of way along, around, and upon all the shores of said Nicollet island, for the purpose of attaching thereto or moving any logs, timber, rafts, boats, or other property lying in said river; and also the right and privilege of constructing and maintaining any and all dams, piers, booms, or other erections in the Mississippi river, to the centre of both channels opposite the said island, or between the said island and the said falls, that the said party of the second part, its successors or assigns, may deem proper to the complete and full development of this and their other water-power at the falls of St. Anthony; and all or so much of said island as shall be flowed by water from such dams or other erections, and the right of flowing the same." The immediate grantors of plaintiff, then being owners of the island, caused a survey and plat thereof to be made, a record of which was duly made, upon which a street called "Park Street" was laid out on the margin or summit of the bank of that part of the island to which this controversy relates; and between

the "out limit" of that street and low-water mark of the river lie the premises in dispute, in this action, varying in width from 20 to more than 100 feet, according to the slope of the banks, the lower part thereof being flowed as aforesaid by the defendant's mill-pond. This strip of land, the trial court held, belongs in part to the plaintiff and in part to the defendant, the line of division being the water-line or margin of the river as raised upon and along the shores of the island by the dams maintained as before stated; that plaintiff's ownership was subject to the right of flowage and other rights and easements granted to the defendant by the deed referred to; and that so much of the land as lies between low-water mark and the margin of the river above it, as so raised along the shores of the island in the defendant's mill-pond, at the ordinary stage of water, by the defendant's dams, as such dams stood on May 20, 1867, and prior thereto, with the right of flowage and other rights and easements granted by the deed, belongs to the defendant in fee.

By its act of incorporation (Laws 1856, *c.* 137, § 9) the defendant was authorized, for the purpose of the improvement of its water-power above and below the falls of St. Anthony in the Mississippi river, "to maintain the present dams and sluices," and to construct and maintain dams, etc., and to make "any and all other improvements in the Mississippi river, upon the property owned or to be owned by said corporators, which may be necessary for the full enjoyment of the powers herein granted." No authority was or could be conferred thereby to enter upon, or to flow, or make any improvements upon, the shores of Nicollet island in pursuance of the authority of the charter, beyond or further than was incident to the rights of the public in the river as a navigable stream, without the consent of its owners. *Morrill* v. *St. Anthony Falls Water-Power Co.,* 26 Minn. 222, (2 N. W. Rep. 842.) Under these circumstances, and with their dams and incidental improvements already made and maintained, the defendant acquired, as grantee, the property and rights, whatever they may be, conveyed by the deed of May 20, 1867, which, by a well-established rule of construction, must be interpreted most favorably to the grantee, as to any matter of doubt or uncertainty touching the description or the extent of the grant.

The contention between the parties arises upon the construction of this deed. The parties thereto seem, from an abundance of caution, to have intended to be very explicit and careful in the terms used in defining the grants and privileges conveyed. What may be termed the first clause is evidently on its face intended to be a grant *in præsenti* of any land in the river answering to the description; and, if the grantor was seised of any such land, it passed by the deed, together with the other privileges and easements enumerated. It is evident that something more than the right of flowage was intended by the language used, which, it will be observed, is "all the entire water-front, land under water, and rights to grants under water, easements, water-power, and privileges in the Mississippi river, upon, about, of, or appurtenant or belonging to, or connected with, lot number one, section 23, * * * commonly known as ' Nicollet Island,' to the centre of the channels." A river is composed of bed, banks, and water or stream. It is generally understood that the river-bed terminates where the banks begin, that is, at low-water mark. The term "river-front" must be given some force and effect in interpreting the deed, and ascertaining the intention of the parties. It evidently was not intended to refer to any part of the "river-bed," but is a description applicable to the shores above low-water mark, and, used in connection with "land under water," lends support to the construction placed upon the deed by the trial court, that it was intended to grant the submerged land above low-water mark, as defined and limited by the court; and it is unnecessary to consider whether the language of the deed is susceptible of a construction in any respect more favorable to the defendant.

As found by the court, the shores of Nicollet island above low-water mark had been overflowed for a long time, and would remain so by the natural operation of the dams if maintained; and, in order to determine what land passed under the general language used in the deed, it was proper to receive evidence of the situation of the premises, and condition of the river, at the date thereof. *Salisbury* v. *Andrews*, 19 Pick. 250; *Butler* v. *Huse*, 63 Me. 447, 453.

The several parts of the deed are not inconsistent. The additional grant of the right of flowage which might necessarily result from

dams and other erections authorized to be made in the river for the complete development of the water-power, was not inconsistent with the grant of the overflowed land. Such flowage, which, indeed, would necessarily be incident to the right given to erect other dams and make further improvements in the river, might extend to land not acquired by the defendant in fee, and the limits of which could not, in advance, be definitely determined. *Morse* v. *Marshall,* 13 Allen, 288. Nor do we conceive there would be any practical difficulty in determining the artificial boundary or shore line established by the normal stage of water in the pond by the use of the dams. In high water, the dams might be overflowed, and in low water the river might be drawn down; but the general level of the water in the pond, as raised by the dams, and determined by a fair and proper use thereof, would seem capable of being readily fixed by observation and measurement. Id. The title to the land in question must be held to have passed to the defendant as claimed.

2. The plaintiff also claims title to the *locus in quo* under a tax-sale, the time for redemption having expired. As the court finds, the land "is described in the certificate as owned by W. W. Eastman and John L. Merriam, (plaintiff's grantors before referred to,) and as being all that part of lot 1, in section 23, township 29, range 24, lying between Park street, in the plat of Nicollet island, and the Mississippi river," and follows the assessment. The question arises whether this description includes the lands above low-water mark which passed by the deed to the defendant, already construed in this opinion. The defendant's contention is that it is limited to the margin of the river as raised by the dam, and therefore excludes its land; and we think this is the correct view. (1) The land conveyed to defendant became part of the water-power property considered as an entirety, and is presumed to have been assessed with, and as a part of, the real estate and improvements connected therewith. *State* v. *Minneapolis Mill Co.,* 26 Minn. 229, (2 N. W. Rep. 839;) Gould, Waters, § 307. (2) On the other hand, in view of the situation and title of the property, the description used in the tax proceedings is satisfied by limiting it to the land actually owned by Eastman and Merriam, and what should lawfully be assessed to them, extending

v.43m—5

to the river as defined by the new and permanently established water-line as made by the dams. The title of each party being of record, it will not be presumed that the separate property of different parties is embraced under one general description in tax proceedings, if the same may be applied and limited to the land of one, and not to that of the other. The description, when applied to the subject-matter, as it properly may be, is susceptible of the construction claimed for it by the defendant. An opposite construction would be misleading, and involve double taxation, and ought not, therefore, to be upheld.

Judgment affirmed.