MINNEAPOLIS TRUST COMPANY *vs.* WILLIAM W. EASTMAN, impleaded, etc.

November 2, 1891.

**Conveyance of Submerged Land—Right of Grantee to Accretions.—** Land bordering on the Mississippi river having been submerged for some distance above the low-water mark by means of dams erected in the river, the owner conveyed in fee all such submerged land. *Held,* that the conveyance also included the riparian rights which were naturally incident thereto, among which was the right to accretions formed by gradual alluvial deposits beyond the line of low water, notwithstanding the fact that the deed also in terms granted certain easements and rights upon the shore, which may be regarded as applicable to the remaining lands of the grantor bordered by the submerged land conveyed.

**Same—Estoppel.—**The fact that the grantor afterwards filled in and raised the land where accretions had formed, by the express permission of the grantee, does not estop the latter from asserting title thereto.

**Evidence—Tax-Deed.—**A tax-deed of other land than that in controversy *held* immaterial and irrelevant.

ON PETITION FOR REARGUMENT.

January 14, 1892.

**Judgment—Estoppel—Admission or Disclaimer.—**The judgment in a former action, containing a clear, precise, and certain adjudication of title, cannot be controlled by any admission or disclaimer in the answer in that action contrary to the judgment. [REP.

Plaintiff brought this action, in the district court for Hennepin county, against Susan R. Eastman and William W. Eastman, her

husband, to determine their adverse claims to certain described lands, the claim of plaintiff resting on the deed of May 20, 1867, to the St. Anthony Falls Water Power Company, which was considered and construed in the suit of Susan R. Eastman against that company, 43 Minn. 60, where the description of lands and riparian rights conveyed by the deed is recited at length. Pending that suit the company conveyed to this plaintiff, and Susan R. Eastman, by mesne conveyance, to the defendant William W., the latter deeds, however, not being filed for record till after this suit was brought. As stated in the decision of *Lochren,* J., by whom the action was tried, "the object of the action and the only thing necessary to be determined is the fixing by accurate description the boundary line between the rights of the two parties, which has become doubtful and difficult to trace because of the alluvion and filling of earth thereon by said William W. Eastman." The court found that the line of the margin of the waters of the Mississippi river upon the bank of the river in the condition of that bank on the 20th day of May, 1867, and as such water was then raised by the dams in the river, at its then ordinary medium stage, is the true line dividing that part of the land described in the complaint which is owned by the plaintiff, from the adjoining land on Nicollet island, which is owned by the defendant William W. Eastman. Judgment was ordered and entered fixing this line with precision, and the defendant William W. Eastman appealed.

*E. C. Chatfield, D. A. Secombe,* and *F. B. Hart,* for appellant.

*Benton & Roberts* and *Jackson & Atwater,* for respondent.

DICKINSON, J.[1]   The judgment of the court below, as to the title of the land in controversy on this appeal, should be affirmed by reason of the legal effect of the deed of conveyance executed by the owners of Nicollet island, including the appellants, to the plaintiff's grantor, the St. Anthony Falls Water-Power Company, on the 20th day of May, 1867. It will therefore be unnecessary to decide the questions raised as to the admissibility in evidence and the effect of a former judgment in the action of Susan R. Eastman against the St. Anthony Falls Water-Power Company, (43 Minn. 60, 44 N. W. Rep. 882,) as an adjudication concluding these parties as to the construction and

[1] Gilfillan, C. J., took no part in this case.

effect of that deed. That deed is a part of this case; and the legal effect which we now ascribe to it, irrespective of former rulings, necessarily leads to the result which was reached by the trial court upon a consideration of the former adjudication. If the proof of the former judgment had been excluded, the decision could not have been different from that which we are called upon to review. It may be added that the learned judge who tried the cause also considered that the decision might rest upon the deed, independent of the former adjudication.

At the trial of this case evidence was presented, which is not returned on the appeal, showing the situation and condition of the premises in controversy at the time of the giving of the deed, May 20, 1867, and before and after that time, and the location of the water-line on the bank of the island. It appears from the findings of the court, and is not a matter of controversy here, that prior to that date dams had been erected in the Mississippi river, which had the effect to raise and retain the water along the sloping shore of the island above the natural low-water mark; that on that day, and during the whole of that month, the water was thus raised and maintained at a certain stage (an ordinary stage of water as affected by the dams) above low-water mark, and that the dams have ever since thus raised and retained the water. Since that time natural accretions to the land have formed along the bank by the deposit of sand, so that the margin of the water has retired towards the centre of the stream beyond the original low-water mark. The plaintiff's claim of title to the strip of land lying between the artificial shore-line, as it was on the 20th of May, 1867, and the natural low-water line, and of this alluvial accretion thereto, was sustained by the decision and judgment of the district court.

The language of the deed above referred to, so far as it describes or designates the premises conveyed, is given in the opinion in the case above cited, and may be here referred to without again reciting it. We also refer to, without enlarging upon, what is there said in support of the conclusion that the deed conveyed in fee to this plaintiff's grantor the submerged land lying on the river side of the arti-

ficially created shore-line as it then existed, and which land is admitted to have been, prior to such conveyance, owned by the grantors in that deed. Indeed, the appellant distinctly expresses his submission to that judicial construction of the deed as conveying the submerged land out to the line of low-water mark.

But it is contended that the conveyance of that land did not carry with it the riparian right to the alluvion which might be formed beyond the original line of low water, and that such right remained in the grantors, whose remaining premises, bounded by the submerged land granted, became, as is claimed, the *riparian* land, to which the rights attached which ordinarily appertain to riparian estates. On the contrary, we hold that the conveyance of the submerged land transferred also the riparian rights which were then incident thereto, and that, as dry land was afterwards formed beyond the line of natural low water by gradual alluvial deposits, the accretion belonged to the grantee. It is not claimed, nor is there anything to justify the claim, that prior to this conveyance of the submerged land it had ceased to be riparian property. If the owners of it had conveyed the premises lying on its landward side, all riparian rights would have remained appurtenant to the submerged land not conveyed. Their ownership of the fee would have still extended as far as the line of natural low water, notwithstanding the fact that the premises had been artificially overflowed and the water retained at a level above that of low water. Nor from the fact that this land was overflowed when the deed was executed, was the conveyance restricted merely to that land, so as not to include the riparian rights ordinarily incident thereto. Such rights were not thereby severed from the principal riparian estate and annexed to the land not conveyed, situate some distance inland from the natural boundary between the land and the water. While the grantors might have excepted from the operation of the deed the riparian rights which were incident to the land conveyed,—*Hanford* v. *St. Paul & Duluth R. Co.*, 43 Minn. 104, (42 N. W. Rep. 596; and 44 N. W. Rep. 1144;) *Gilbert* v. *Eldridge, supra*, p. 210,—the terms of this deed do not justify the conclusion that this was intended. While the instrument bears on its face

the appearance of having been drawn with studious care, the absolute conveyance of what was then undoubtedly the proper riparian land is without any express or clearly impliable limitation upon the natural and ordinary meaning and effect of it as an unqualified conveyance of such land, with the rights naturally and actually appurtenant thereto. The fact that by specific mention certain easements were also included in the conveyance, and which, in part at least, may well be deemed to have been intended to confer rights in the grantors' remaining land lying inland from the submerged land conveyed, cannot be deemed effectual as qualifying or limiting the operation of the deed as respects the tract conveyed in fee. The clear designation of "the entire water front, land under water," as premises conveyed, and which was distinctly and obviously applicable to and embraced a definite strip of the grantors' land extending to low-water mark, cannot be thus qualified or controlled. It is apparent that the attention of the parties was directed to the subject of riparian rights, and it must be supposed that if it had been intended to except from the operation of the conveyance of the riparian land the rights which were naturally appurtenant thereto, the intention would have been clearly expressed.

The fact sought to be shown by the appellant, that subsequent to the conveyance by him and his co-owners to the plaintiff's grantor, the St. Anthony Falls Water-Power Company, the appellant, with the express permission and license of an agent of that company, filled up the premises in controversy, so as to raise and extend the dry land on the river side, at a great expense, afforded no ground upon which he could avail himself of the claim that the company, or its successor to the estate, this plaintiff, is estopped to assert its title. The facts and the rights of the parties were as open to the appellant, the grantor, as they were to the grantee. There is no claim that the appellant was deceived or misled as to any fact affecting the rights of the parties. He is presumed to have known that he had no title to the premises, and the permission of the owner that he fill up and extend the land out into the river or mill-pond neither conferred any title on the appellant, nor divested the other party of its title, nor operated as an estoppel.

The tax title offered to be shown, respecting the land not submerged, was immaterial and irrelevant as respects the other land, which only is the subject of controversy on this appeal.

Judgment affirmed.

---

The defendant having moved for a reargument, the following opinion on the motion was filed January 14, 1892:

DICKINSON, J. After the filing of our decision on this appeal the appellant presented an application for a reargument. Having fully considered this application and the reasons urged in its support, it is concluded that it should be denied. In the opinion we did not refer to a point made by the appellant, and again urged in the application for a reargument,—that in the answer in the former action the St. Anthony Falls Water-Power Company disclaimed title to such part of the premises in controversy as had *then* ceased to be submerged land. If it be admitted that the answer, properly construed, did constitute or embrace such a disclaimer, it could not be given conclusive effect against that defendant or its assigns, contrary to the clear, express terms of the *judgment* in that action, which adjudged that defendant to be the owner in fee of the land extending "from low-water mark in said river to the line or margin of said river as raised by said dams in the month of May, 1867." That embraced the land here in question. The clear, precise, and certain adjudication as to the title was of conclusive effect upon the parties, and cannot be made subordinate to any admission or disclaimer in the answer contrary to the judgment.

It is claimed that we have misunderstood the fact as to the land covered by the tax deed, which was based upon the assessment of 1882; that at that time (1882) the accretion had formed substantially as it existed in 1887 and 1888, so that the land in question, or a part of it, was then above the water-line, and would be embraced in the tax deed of land "lying between Park street * * * and the Mississippi river." As to this, all that need be said is that the fact assumed as the basis for this contention is not disclosed by the record. It is not found as a fact that in 1882 there had been any such

accretions to the land, nor does the bill of exceptions show that there was any evidence of such a fact.   While it appears that such alluvial deposits had formed as early as 1887, nothing is shown as to the condition, in this respect, in 1882.   Hence the tax deed offered in evidence cannot be regarded as embracing land beyond the limits to which it was deemed to be restricted when this same tax deed was under consideration in *Eastman* v. *St. Anthony Falls Water-Power Co.*, 43 Minn, 60, (44 N. W. Rep. 882.)   In other words, it does not appear to have embraced the land in controversy.

Upon the other matters set forth in the application for reargument we do not desire to add anything to what is said in the opinion heretofore filed.

The application is denied.