HUFFMAN *v.* HENDERSON COMPANY.

Opinion delivered October 5, 1931.

*H. V. Betts, J. M. Shackleford* and *Coulter &
Coulter,* for appellants.

*J. K. Mahony, H. S. Yocum, W. T. Saye* and *J. N.
Saye,* for appellees.

SMITH, J.   Prior to the assessment for the general
taxes of 1924, there had been a severance of both the tim-
ber and the mineral rights from the north half of the
northwest quarter of the northeast quarter of section 8,
township 18 south, range 15 west, in Union County, Ark-
ansas, and this severance had been effected by deeds duly
executed and of record in that county.

The land above-described was assessed for the year
1924, and, no taxes being paid thereon, the same was sold
in June, 1924, to F. M. Betts.  On June 30, 1927, the tax
purchaser having died, the county clerk executed his tax
deed to H. V. Betts, the administrator of the deceased tax
purchaser.  The owners of the separate interests in the
above-described land have joined in this suit to cancel

the clerk's deed, and from a decree awarding that relief is this appeal.

In support of this decree, it is insisted that the sale of said land was void because the separate interests in said land were not separately assessed. It is also insisted that there was no authority to execute a deed to the administrator of the tax purchaser, as the statute requires such deeds to be made to the heirs or assigns of the purchaser, and that the court below was correct in canceling the deed to the administrator, whether the sale was void or not.

At the 1897 session of the General Assembly an act was passed for the assessment of mineral rights, which appears as § 9856, Crawford & Moses' Digest, and reads as follows: "When the mineral rights in any land shall, by conveyance or otherwise, be held by one or more persons, and the fee simple in the land by one or more other persons, it shall be the duty of the assessor when advised of the fact, either by personal notice, or by recording of the deeds in the office of the recorder of the county, to assess the mineral rights in said lands separate from the general property therein. And in such case a sale of the mineral rights for nonpayment of taxes shall not affect the title to the land itself, nor shall a sale of the land for nonpayment of taxes affect the title to the mineral rights." Acts 1897, p. 38.

"That mines may form a distinct possession and a different inheritance from the surface lands has been long settled in England," as was said in the case of *Caldwell* v. *Copeland,* 37 Pa. St. 427, 78 Am. Dec. 436, and the act quoted was not intended to create these different estates, but to provide for their separate assessment for purposes of taxation. As these estates might be separately owned, the intent of the statute quoted was that they should be separately assessed, so that each owner might pay the taxes upon his own estate, and upon that only. This intent is unmistakably manifested in the provision that " * * * a sale of the mineral rights for nonpayment of taxes shall not affect the title to the land

itself, nor shall a sale of the land for nonpayment of taxes affect the title to the mineral rights.''

Many cases by this court have settled the law that a valid assessment is essential to a valid sale of the property taxed for the nonpayment of the taxes, and the description of the property assessed and sold must be such as to apprise, not only the owner, but all other persons, of the property to be sold. *Brinkley* v. *Halliburton,* 129 Ark. 334, 196 S. W. 118, 1 A. L. R. 1225; *Cotton* v. *White,* 131 Ark. 273, 199 S. W. 116; *Buchanan* v. *Pemberton,* 143 Ark. 92, 220 S. W. 660; *American Portland Cement Co.* v. *Certain Lands,* 179 Ark. 553, 17 S. W. (2d) 281.

Here the description employed at the sale described only the surface of the land, and contained no reference to the mineral or timber rights. Such description is ordinarily sufficient to cover both the timber rights and the mineral rights, as well as the surface rights and an assessment and a sale under a description of the surface only would operate to include both the timber and mineral rights, unless there had previously been a severance of these rights. But the statute quoted has provided that there must be a separate assessment where there has been a previous severance, and that in such case the sale of one does not affect the title to the other.

The State of Minnesota has a statute (§ 1973, Gen. Stat. 1913) which reads as follows: ''That whenever any mineral, gas, coal, oil, or other similar interests in real estate are owned separately and apart from and independently of the rights and interests owned in the surface of such real estate, such mineral, gas, coal, oil, or other similar interests may be assessed and taxed separately from such surface rights and interests in said real estate, and may be sold for taxes in the same manner and with the same effect as other interests * * * are sold for taxes.''

This statute is similar to ours except that it does not specifically provide, as does § 9856 of our statutes, that a sale of the mineral rights for the nonpayment of the

taxes thereon shall not affect the title to the land itself, nor that the sale of the land for the nonpayment of the taxes thereon shall not affect the title to the mineral rights.

A tract of land was sold in the State of Minnesota for the nonpayment of the taxes thereon, upon which the mineral rights had been severed by a conveyance thereof, and it was held that: "A tax certificate, based upon tax proceedings in which the property is described by its government description, without mentioning a mineral interest owned separately from the surface, does not cover such mineral interest."

In the opinion so holding (*Washburn* v. *Gregory Company*, 125 Minn. 491, 147 N. W. 706, L. R. A. 1916D, 304) it was said: "But it was the duty of the taxing officers, under the statute, as well as under the common law, to assess and tax separately the interests of plaintiff and those of the owner of the surface. The deed separating the mineral rights from the surface rights was of record at the time the tax was levied and became a lien. It is to be presumed that the taxing officers intended to follow the law. These considerations are helpful in reaching a decision whether the description of the property used in the tax proceedings includes the mineral rights. It contains no mention of any such right or interest. Manifestly it would have been easy to have described the property taxed as 'mineral rights,' as it would have been to describe it as 'surface rights.' The description used does neither, but is merely the government description. The interest of plaintiff in the minerals was plainly real estate, and properly taxable separately. The law directed the assessing officers to tax it separately. If the separate interest of the mineral owner is covered by this description, the result is that his property is taxed without notice to him, under the guise of taxing the property of another. The courts do not favor such a result. In *Eastman* v. *St. Anthony Falls Water Power Co.*, 43 Minn. 60, 44 N. W. 882, the question was as to what land was included in the description used in the tax proceedings.

Mr. Justice VANDERBURGH said: 'The title of each party being of record, it will not be presumed that the separate property of different parties is embraced under one general description in tax proceedings, if the same may be applied and limited to the land of one, and not to that of the other. The description, when applied to the subject-matter, * * * is susceptible of the construction claimed for it by the defendant. An opposite construction would be misleading, * * * and ought not therefore to be upheld.' This language seems particularly appropriate here. The description in the case at bar when applied to the subject-matter, and viewed in the light of the facts and the law as they existed at the time the tax was levied, is fairly susceptible of the construction claimed for it by the plaintiff and adopted by the learned trial court. We therefore decide that the mineral or mineral rights of plaintiff were not covered by the description in the tax proceedings, and were not taxed in those proceedings.''

We have here the identical case except that § 9856 of our statutes declares the conclusions reached and announced by the Supreme Court of Minnesota in the construction of their statute, which is not as broad as ours.

Our statute upon the assessment of timber rights is more nearly like that of Minnesota above quoted. It was passed at the 1905 session of the General Assembly (Act April 7, 1905, p. 361), and appears as § 9855, Crawford & Moses' Digest, and reads as follows: ''Hereafter all timber in this State which has been sold separately and apart from the land on which it stands shall be classed as personal property, and shall be subject to taxation as such. And the said timber interests shall be assessed and the taxes collected thereon in the county where said timber is located.''

We feel constrained, therefore, to give our statute upon the assessment of timber rights (§ 9855, Crawford & Moses' Digest) the same construction as was given by the Supreme Court of Minnesota to the statute of that State above quoted. The statute of this State in regard to

the assessment of mineral rights (§ 9856, Crawford & Moses' Digest) is too unambiguous to admit of any other construction.

We therefore hold that, when there has been a severance of either the timber or mineral rights by a deed duly recorded in the office of the recorder prior to the assessment for taxation purposes, such rights must be assessed separately and apart from the surface rights, and when this has not been done the assessment made will be held to apply only to the surface rights, and a sale under this assessment will operate to convey only the title to the surface rights.

The case of *Peterson* v. *Hall*, 57 W. Va. 535, 50 S. E. 603, and other cases following it, which depended upon the construction of the taxation statutes of West Virginia, are cited as having reached the opposite conclusion. A headnote in the Peterson case reads as follows: "When the surface of land is owned by one person, the oil in place by another, a sale for taxes in the name of the owner of the surface will pass also the oil owned by the other person, his estate not being charged on the tax books, under § 25, chapter 31, Code 1899."

It was said in the opinion in the case of *Peterson* v. *Hall, supra,* that "Chapter 31, § 25, Code, makes a tax deed pass 'such right, title and interest in and to said real estate as was vested in the person or persons charged with taxes thereon for which it was sold, at the commencement of, or at any time during the year or years for which said taxes were assessed, and all such right, title and interest therein of any other person having title thereto, who have not in his or their own name been charged on the land book of the proper county or assessment district, with the taxes chargeable on such real estate for the year or years for the taxes of which the same was sold, and, having actually paid the same as required by law, shall be transferred to and vested in the grantee in such deed.' "

We have no such statute. It was further said in the Peterson case that "A lease for oil confers no actual

estate until oil is found, but only a right to explore and produce oil. *Urpman* v. *Lowther Oil Co.*, 52 W. Va. 501, 44 S. E. 433, 97 Am. St. 1027," and that "The South Penn Company had only an inchoate right. No taxable estate was then in the South Penn Company (the lessee) for want of development."

We have held, on the contrary, that a conveyance of the mineral or the timber rights, or a reservation of such rights in a deed conveying the surface rights, creates, in one case and reserves in the other, a separate estate, and the statutes quoted (§§ 9855 and 9856, Crawford & Moses' Digest) make this estate separately taxable. *Bodcaw Lumber Co.* v. *Goode,* 160 Ark. 48, 254 S. W. 345, 29 A. L. R. 578; *Claybrooke* v. *Barnes,* 180 Ark. 678, 22 S. W. (2d) 390, 67 A. L. R. 1436.

The case of *State, ex rel. Attorney General* v. *Arkansas Fuel Oil Co.,* 179 Ark. 848, 18 S. W. (2d) 906, was a suit for back taxes on certain oil leases which had not been separately assessed for taxation, and we were there called upon to construe § 9856, Crawford & Moses' Digest, and we said: "We construe this statute to mean that the property conveyed to the lessee in mining lease is taxable separately from the land. This court has recently held that the rights granted to the lessee are not a license, but an interest and easement in the land itself," and a number of cases to that effect were there cited.

We conclude, therefore, that the Minnesota case, *supra,* and not the West Virginia case, is applicable to the facts in this case.

In so far as the clerk's tax deed to the administrator of the estate of the tax purchaser appears to convey title to either the mineral or the timber rights, it was properly canceled, and that decree is affirmed.

As to the form of this tax deed, it may be said that the statute (§ 10,108, Crawford & Moses' Digest) provides that, upon the expiration of the two years after the sale allowed for the redemption, the clerk of the county court, on the production of the certificate of purchase, shall execute "to the purchaser, his heirs or assigns," a deed

of conveyance for the land described in such certificate. The deed should therefore have been made to the heirs or assigns of the tax purchaser, and not to his administrator, as was done in this case.

This, however, was a mere error in the exercise of the power and duty conferred by the statute upon the clerk, and did not exhaust the power to execute a deed conforming to the requirements of the statute, and that officer may yet execute a deed conveying the land, but excepting from the conveyance the timber and mineral rights, which were not included in the assessment pursuant to the authority of which the land was sold for taxes.

At § 379 of the chapter on Taxation, 26 R. C. L., page 421, it is said: "When there has been a sale for nonpayment of taxes carried out in accordance with law, and all the conditions have been complied with so as to entitle the purchaser to a deed of the premises, the power of the collector to execute and deliver a valid deed is not exhausted by the execution and delivery of an invalid one, and, if the deed first delivered is defective and invalid, the collector may execute and deliver a substitute deed, which, if drawn up in accordance with the statutory requirements, will be as effective to pass the title as if the prior invalid deed had never been delivered. The length of time that has elapsed since the first deed was issued does not affect the right to issue a second one. The collector may make a valid substitute deed even after his term of office has expired, or his successor in office may make it."

The decree of the court below is therefore affirmed, and the heirs or assigns of the tax purchaser may yet apply to the clerk of the county court of Union County for a deed conforming to the directions and requirements of the statutes, but excepting the mineral and timber rights.