HUFFMAN *v.* HENDERSON COMPANY.

4-2775

Opinion delivered January 16, 1933.

*Coulter & Coulter,* for appellant.

*J. K. Mahony, H. S. Yocum, W. T. Saye* and *J. N. Saye,* for appellee.

SMITH, J. The north half of the northwest quarter of the northeast quarter of section 8, township 18 south, range 15 west, in Union County, Arkansas, was sold in June, 1925, for the nonpayment of the taxes assessed against it for the year 1924. Prior to the assessment of the land for the 1924 taxes, there had been a severance

of both the timber and the mineral rights, which latter had not been separately assessed, and the validity of the tax sale for any purpose was attacked on that account.

The owners of the separate interests in the land joined in a suit to cancel the tax sale and deed thereunder, and, from a decree awarding that relief, an appeal was prosecuted to this court. Upon the submission of the case in this court, it was held that, where there had been a severance of the timber or the mineral rights by duly recorded deed, it was necessary for the timber or mineral rights to be assessed separately and apart from the surface of the land, and that where this was not done the assessment applied only to the surface, and a sale for the taxes so assessed did not operate to convey the timber or the minerals. *Huffman* v. *Henderson Co.*, 184 Ark. 278, 42 S. W. (2d) 221.

After the rendition of this opinion, a petition was filed in the court from which the appeal had come for a writ of possession to place the present owners of the tax title in possession, and from a decree refusing to award that relief is the present appeal.

The testimony heard at the trial from which this appeal comes developed the following facts, as we find them to be: The Henderson Company, hereinafter referred to as the company, an Oklahoma corporation authorized to do business in this State, has extensive interests, in the State in the operation of which the twenty-acre tract of land above-described plays an important part. Oil has been produced from this land since 1921, and in 1922 appellee constructed an extensive casing-head gas plant thereon, which has been, and is now used in the manufacture of gasoline from the production from said land and other lands in Union County. The company also built upon the land an office and a residence for the use of its managing officer in this State.

In 1923 J. O. Huffman, who was then employed by the company in another State, was transferred to this State, and occupied, with his family, the residence above referred to as the general superintendent and the highest representative in authority of the company in the State.

It was a part of Huffman's duties as general agent to assess the company's holdings in this State, and to pay the taxes thereon by drawing drafts upon the company at its home office. It was Huffman's duty to have assessed and paid the taxes for the year 1924, and for which the land sold in 1925.

Huffman did not discover that this very valuable twenty-acre tract of land had been sold for taxes until July or August, 1930, and he then notified the home office of the company of that fact. He was advised by the company to take the matter up with the company's local attorneys in this State, and to take such action as was necessary to clear the company's title. He consulted the attorneys, who asked that an abstract of the title be brought down to date, and this was done. Several conferences were held between the attorneys and Huffman with a view of obtaining a deed to the company from the tax purchaser, and Huffman was entrusted with these negotiations. The original tax purchaser had died, but Huffman interviewed one of the heirs of the purchaser, who represented himself and the other heirs, and they offered to accept $2,500, and Huffman submitted a counter-proposition of $500. Huffman was advised by the company's attorneys that it was not necessary to bring suit, as the company was in possession and would acquire the tax purchaser's title by possession if no action was taken by the heirs of the tax purchaser before the statute of limitations had run.

While these negotiations were pending the company decided to dispense with Huffman's services, and on September 30th wrote him to that effect. This letter advised Huffman, however, that his resignation would not be effective until November 30th, and that his salary of $450 per month would be continued until that time. He was asked to turn over all records and company property to his successor, and this he did on October 1, 1930. On October 2, Huffman employed an attorney to buy the land. On the following day a deed was made to this attorney for a consideration of $1,000 cash in hand paid.

Huffman's wife furnished the thousand dollars, and the attorney later deeded to her an undivided half interest, retaining title to the other half interest for his services.

The court below decreed that the attorney and Mrs. Huffman had acquired title to the land in trust for the company, and directed that a conveyance of the land be made to the company upon payment of the purchase price, and this appeal is from that decree.

The instructions given Huffman by the company to recover the property for it were never withdrawn, yet he never advised the company that a quitclaim deed could be obtained for only $500 more than the company had offered. To the contrary, on the day after he was discharged, and while still in the pay of the company, he arranged to buy this land for $1,500 less than the sum for which he had reported to the company that it could be purchased.

Opposing counsel have cited many cases declaring the duty of an agent to his principal, a number of these being decisions of this court. We do not review these cases, as the law of the subject is well settled. The third headnote to the case of *Kelly* v. *Keith,* 77 Ark. 31, 90 S. W. 150, declares the law applicable to this case, and reads as follows: "Where an agent undertook to purchase land for her principal for $300, and found that it could not be purchased for less than $350, which she paid without notifying her principal or giving him an opportunity either to accept or to reject the land at that price, she will be held, at his election, to have purchased for him in performance of her agreement."

Section 206 of Perry on Trusts and Trustees, vol. 1 (7th ed.), appearing in the chapter on constructive trusts, deals with the conditions under which an agent, attempting to act for himself, is yet held to be a trustee for his principal, and this statement of law there appearing is peculiarly applicable to the facts of this case: "An agent cannot take advantage of his own negligence; as where one allowed his principal's property to be sold for taxes

and bought it himself, he was held as a trustee, although the relation of principal and agent had ceased.''

The decree of the court below appears to be correct, and it is therefore affirmed.