COLLINS, Respondent, v. LYMAN COUNTY et al., Appellants.
(137 N. W. 600.) ·

1.  Counties—Boundary Lines—Conflicting Meredian Surveys—Stanley and Lyman County Boundary Line.

    Laws 1897, Chaps. 41, 45, for submission to voters of Stanley and Lyman counties of new boundary lines thereof, which were approved by such electors, provided that from the point where township line between ranges 25 and 26 east of Black Hills Meredian intersected township line between townships 2 and 3, north of that meredian survey base line, the boundary between such counties should extend "east along said township line" to Missouri river; but that meredian survey does not extend to said river, but only to range line on west side of range 79 of fifth P. M. survey, and the township line between townships 2 and 3, if extended due east, would not coincide with any township line in the fifth P. M. survey, but, by deflecting this line to north about 1⅞ miles, it would reach north boundary line of township 108. Held, it being impossible for such boundary line to extend east, and also to extend along a township line, that it was the intention of the legislature, and of said electors, that the boundary line on reaching the fifth P. M. survey should deflect to north line of township 108, especially in view of an act passed in 1891 describing boundary line between Stanley county and the unorganized county of Presho as the township line between townships 108 and 109, and an act passed in 1883 describing southern boundary line of Stanley county as a line 48 miles north of tenth standard parallel of the sixth P. M. survey; the north line of township 108 being exactly 48 miles north of base line of fifth P. M. survey, that being the only base line used east of the range line on west side of range 79; it

further appearing that township line between townships 108 and 109 of fifth P. M. survey was not surveyed west of Missouri river until 1893, and that in 1891 the · legislature probably supposed that the township lines in the sixth and the fifth P. M. surveys would coincide where such surveys joined.   The land in question is, therefore, in Lyman county.

2.   Counties—Legislative   Boundaries—Vote   of   People—Changing   Boundaries.

While, under the Constitution, the legislature has no power to change boundary lines of an organized county without vote of people thereof, an act defining boundary lines of such county may be considered in determining what the understanding of the people was in relation to the boundary lines then existing; and it is presumed the legislature intended to describe such boundary line as it then existed, the act itself not providing for submission thereof to vote of people.

(Opinion filed October 1, 1912.)

Appeal from Circuit Court, Stanley County. . Hon. JOHN F. HUGHES, Judge.

Action by Michael T. Collins against Lyman County and others, to quiet title to land sold for taxes by treasurer of Lyman County, and to cancel a tax sale certificate under such sale, said land having been taxed in both Stanley and Lyman counties.   Judgment for plaintiff, and defendants appeal.   Reversed and remanded.

*F. C. Wederath,* and *Sutherland & Payne,* for Appellants.

As shown by the abstract and statement already made, plaintiff's land, final proof on same having been made on January 18, 1909, became taxable and was placed on the tax books for that year in both the counties of Lyman and Stanley, and taxes were levied on said land for that year in each of the said counties. Plaintiff paid the taxes levied in Stanley county, but failed to pay the taxes levied in Lyman county, and at the tax sale held by the county treasurer of Lyman county in November, 1910, the premises were sold to the defendant, W. H. McCracken, for the delinquent taxes of the preceding year, and certificate of tax sale issued to him by the treasurer of said Lyman county.   The validity of this tax certificate is the question at issue in this case.   The validity of such tax certificate depends upon whether the said land was, at the time of the levy, in Lyman or Stanley county.

Chapter 41 of the Session Laws of 1897 was an act changing and defining the boundaries of Stanley county.   Chapter 45 of the same Session Laws is an act changing and defining the bound-

aries of Lyman county. These were companion statutes in so far as they related to the boundary line between the two counties, and the same language is used in describing the west and north lines of Lyman county where it borders upon Stanley county as is used with reference to Stanley county in defining the corresponding lines constituting its boundaries. It is agreed that in each county there was a vote in favor of making the boundaries as prescribed by these statutes. The decision in this case must rest upon the location of the line as described in these statutes which fixed the north boundary of Lyman county and a part of the south boundary of Stanley county. If such boundary line runs as contended by the plaintiff, his land is in Stanley county and always has been since it became taxable, and Lyman county had no right or authority to levy taxes on the same, and the tax sale certificate of the defendant McCracken is void. The plaintiff contends that the boundary line where it strikes the new survey should be continued straight east to the Missouri river. Plaintiff's land is in the disputed strip.

In support of the contention of appellants that this boundary line should follow the township line to the river, we submit the following proposition:

The whole course and policy of legislation of the territory and state has been to make the boundaries of the counties upon the township lines.

In this connection, we cite the court to the earlier statutes relating to the boundaries of the counties in question as follows:

Laws of 1872-3, Lyman, Presho, Stanley and Pratt counties established and boundaries defined. Chapter 19, page 45, seq.

Laws of 1874-5, page 70; boundaries of Stanley and Pratt counties defined.

Laws of 1883, page 52, boundaries of Stanley county prescribed.

Laws of 1891, page 101, boundaries of Lyman and Presho counties prescribed.

We also point to the statutes of the state generally and of the territory previous to the admission as a state, relating to county boundaries, as indicating that the legislature almost universally bounded counties with township lines if a survey had been made. Reference to the statutes of the session of 1872-3

and 1874-5, and to appellant's Exhibit 1, which is a map of Dakota territory and contains the county township lines as established up to the year 1876, and thus illustrates the statutes up to that time, will show that survey had been made of a great part of the territory lying east of the Missouri river, while practically none west of the Missouri river had been surveyed. Where surveys had been made, the counties are bounded with reference to township lines; where surveys had not been made, the counties are bounded with reference to longitudinal and meridian lines, imaginary lines, capable of being located, but never, in fact, surveyed out or actually located. Chapter 35 of the Laws of 1883. This line had not been surveyed nor had the territory in the vicinity thereof been surveyed at that time. The Legislature evidently thought that the survey of this territory would be made according to and based upon the *Sixth* Principal Meridian. They evidently conceived that a line forty-eight miles, or eight townships, north of this Tenth Standard Parallel would be a *township line*. As a matter of fact, when the survey was made, the land in the vicinity of this line was surveyed according to and based upon the Black Hills base line. The line between townships 2 and 3 north, based upon the Black Hills base line, which later statutes have fixed as part of the south boundary of Stanley county, is eight townships north of the Tenth Standard Parallel based upon the *Sixth* Principal Meridian, but it is not exactly forty-eight miles north, but is forty-seven miles and 69.53 chains north. (See defendant's Exhibit IV) . The south boundary, then, of Stanley county, as fixed by the Laws of 1883, is not the same line as was fixed by the later statutes which referred to a different survey, but, *in each instance, the boundary line was either placed upon the township line, or an attempt was made to so place it upon a township line.*

It is to be noted that the survey of South Dakota east of the Missouri river was made with reference to and was based on the *Fifth* Principal Meridian. Also Gregory, Tripp and the east portions of Lyman and Stanley counties were surveyed with reference to the same Meridian. The territory south of White river and west of Tripp county and extending to the east line of Fall River county was surveyed with reference to the *Sixth* Principal Meridian. The remaining territory of the state appears to

have been surveyed with reference to the Black Hills Meridian.

Chapter 35 of the Session Laws of 1883, already mentioned, refers to two of these surveys, namely, the survey based on the Sixth Principal Meridian and the survey based on the Black Hills Meridian.

Chapter 41 of the Session Laws of 1891 fixed the boundaries of Lyman and Presho counties, and fixed them properly according to the surveys made of the land included within the counties, which was based upon the Fifth Principal Meridian, and fixed same upon township lines.

But we are studying the statutes prior to 1897, simply for the purpose of *interpreting* the 1897 statutes, and to arrive at the legislative intent with reference to the disputed boundary line. And we say that the history and course of legislation of the territory and state relating to the boundaries of the counties in question and relating to county boundaries generally, shows a universal legislative intent to bound counties with township lines. Following this universal legislative intent, Section 1 of Article 9 of the state Constitution contains this language: "But no new counties shall be organized so as to include an area of less than twenty-four congressional townships as near as may be without dividing a township or fractional township," thus indicating a purpose to keep intact the townships within a county.

Chapter 45 of the Laws of 1897 had for its purpose to greatly enlarge Lyman county as then existing. It practically added to it what was then the unorganized counties of Presho, and Pratt. Likewise, Chapter 41 of the Laws of 1897 proposed to entirely change the boundaries of Stanley county.

The court may look to the acts forming other counties both before and subsequently, for the purpose of ascertaining the intention of the Legislature as to such line. 11 Cyc. 349, Note 61; Hamilton v. McNeill, 13 Gratt. (Va.) 389.

We have tried to show in accordance with the principle cited in the above authorities, that it has been the universal legislative policy to bound counties with township lines. We believe that this review and consideration of the legislation of the territory and state justifies the conclusion that the Legislature of 1897 intended the boundary line between Lyman and Stanley counties to follow on the township line to the Missouri river.

We go further, now, and declare that the established rules for the construction and interpretation of statutes relating to boundaries, require that this disputed line be a township line.

In an act fixing the boundaries of a county, a call for a course yields to a call to run with a designated line. 11 Cyc. 349b, note 67; 5 Cyc. 925b and cases cited; Roane County v. Anderson, 14 S. W. (Tenn.) 1079; Rabun County v. Habersham County, 5 S. E. (Ga.) 198; Palms v. Shawano County, 61 Wis. 211; Bolden v. Sherman, 110 Ill. 425.

*Philip & Waggoner,* and *Horner, Martens & Goldsmith,* for Respondents.

In the first instance it must be conceded that the territory and state legislatures had the power to fix the boundary lines between these counties where they saw fit, and for that purpose to adopt any description deemed proper to express their intention, provided it located the boundaries with reasonable certainty. This, of course, is always subject to the provisions of the constitution after its adoption that "all changes in county boundaries in counties already organized before taking effect, shall be submitted to the electors of the county or counties to be affected thereby, at the next general election thereafter and be adopted by a majority of the votes cast in each county at such election." Section 1, Art. 1, Constitution S. D.; Stuart et al. v. Kirley et al., 12 S. D. 246.

The Legislature of 1897 changed the boundaries of both Stanley and Lyman counties, not by taking from either of these counties any of the land formerly incorporated therein, but by adding to each of said counties unorganized counties adjacent to each of them and previously attached for judicial and other purposes. And the Legislature, with this in view, enacted Chapter 41, Session Laws of 1897, fixing boundaries of Stanley county. Chapter 45 of the Session Laws of 1897 defines the north boundary of Lyman county in the same manner and form as given of Stanley county within the limits affected by this case.

It is contended by the respondent that it was the intention of the Legislature to follow the township line produced or extended between townships 2 and 3 north of the Black Hills base line to the Missouri river.

In arriving at the intention of the Legislature, in the fixing of these boundary lines, all of the conditions then existing must

be taken into consideration, together with the other laws fixing boundaries as previously passed. At the time the Legislature convened and was in session in 1897, there were two surveys, so-called, affecting the land situated within the north boundaries of Lyman county and the south boundary of Stanley county. One was a survey from the west based on the Black Hills Meridian and the other was a survey from the east based on the Fifth Principal Meridian. The survey from the west at that time ended at the east line of Range 31, Black Hills Meridian, as far as it affects the boundary in controversy. The territory situated in Lyman and Stanley counties, through which the boundary line in dispute run, was at that time situated upon the Lower Brule Indian reservation, and the maps in general use at that time showed this land to be unsurveyed, and as a matter of fact, as shown by the Exhibits in the record, the townships through which the boundary line in dispute runs, were not subdivided into sections, and the corners established, and the survey approved, until March 6, 1897, and June 30, 1903, and in some instances the township lines were not established and approved until that time.

It was therefore impossible for the Legislature to have described more accurately the southern boundary of Stanley county.

Chapter 35 of the Session Laws of the Territory of Dakota of 1883, defines the southern boundary of Stanley county as follows: "Bounded on the south by a parallel line 48 miles north of the Tenth Standard Parallel based on the Sixth Principal Meridian, (which said parallel line is hereby declared the north boundary line of the counties of Pratt and Presho)."

In 1893 the Legislature, Chapter 46, Session Laws of that year, defined the boundaries of Stanley county, giving as a reason that they had been heretofore imperfectly defined, and the southern boundaries are given as follows: "Bounded on the south by the township line between townships 2 and 3, North of Black Hills base line, and the north boundary of Presho county."

We call the court's particular attention to this description for the reason that the Legislature recognizes by this description that the township line between 2 and 3, north of the Black Hills base line, and the north boundary of Presho county are on the same direct line. It was intended that this line should be eight townships north of the tenth standard parallel, and the 48 miles,

or the eight townships north, brings us to the township line between townships 2 and 3, north of the Black Hills base line, and the line adopted by the Legislature in 1893 and in 1897 as the southern boundary of Stanley county.

We contend that if the Legislature in 1897 had intended to exclude this land that had been within the boundaries of Stanley county since 1883 that it should have stated this south boundary line in clear and unmistakeable terms, for instance, "to the township line between townships 2 and 3, North of Black Hills base line; thence east along said township line to the east line of Range 31 east of Black Hills Meridian; thence north on said range line to the Second Standard Parallel, Fifth Principal Meridian; thence east along said parallel to the center of the main channel of the Missouri river," and we submit that it is only by a definite description of that kind that the electors of Stanley county would know, or be presumed to know, that the territory formerly within the boundaries of Stanley county was to be excluded therefrom. On the other hand, take the description as given in Chapter 41, considered with all of the surrounding conditions, what other description could be given of the southern boundary of Stanley county to include this land within the description, other than that given? In 1893, the Legislature, when it came to that part of the boundary, used the north boundary of Presho county to describe it, but in the act of 1897, Presho county was to be eliminated and merged into Lyman county, hence that boundary could not be used, and, as this land was not surveyed into sections and quarter sections, those lines could not be used, therefore the township line between 2 and 3 was used as far as it existed, and the imaginary line direct east to the Missouri river was used for the remainder of the distance, and, as we have heretofore said, this could have been made plainer by the use of the words "extended" or "produced," but whether these words were used or not, we think there can be no question that such was the intent of the Legislature and was the direct understanding of the electors of Stanley county when they voted on the proposition.

It will be noticed that in Sec. 4, Chap. 41, Session Laws of 1897, it was provided that if the boundary lines of Stanley county were changed as in the act provided, then all records that have been kept by any officer of Stanley county for any unorganized

county that had been heretofore attached to Stanley county, should become the records of Stanley county, and the Register of Deeds' index, all deeds and other instruments in the index books of Stanley county, with proper reference to the books where such instruments may have been recorded. It will be noted from this, that the legislative intent in fixing the boundary lines was to add to Stanley county those unorganized counties that had been previously attached to Stanley county for judicial and other purposes. No reference is made in the act, to the transfer of any records to any other county of property sought to be excluded from said county.

The contention of appellants, as we view it, cannot be sustained as to the intention of the Legislature in the description of the boundaries of Stanley and Lyman counties for the reason that the description contended for by the appellants does not close but leaves both counties without a boundary line between Townships 2 and 3, Black Hills Meridian, and the Second Standard Parallel, Fifth Principal Meridian, for it is well settled that the boundary must be made to close in some way or else the grant will fail. 4 Am. & Eng. Ency. of Law, 808; Den v. Cunningham, Mart. & Y (Tenn.) 73; McNairy v. Hightour, 2 Overt. (Tenn.) 302; White v. Hembree, 1 Overt. (Tenn.) 529; Eubanks v. Harris, 1 Spears L. (S. Car.) 183; Doe v. King, 3 How. (Miss.) 125.

The authorities state the rule as follows: Where a line has been marked out only part of the way, the boundary of the remainder of the distance should be a straight line from the end of the marked line to the corner called for. George v. Thomas, 16 Tex. 74; 67 Am. Dec. 612; Thornbery v. Churchill, 16 Am. Dec. 125; 4 Am. & Eng. Ency. of Law, 776.

The fact that the lines of a survey were not actually run and marked will not invalidate a description, provided the land can be identified with reasonable certainty. 4 Am. & Eng. Ency. of Law, 776; Williamson v. Simpson, 16 Tex. 433; Stafford v. King, 30 Tex. 273, 94 Am. Dec. 304; Jones v. Burgett, 46 Tex. 284; Kuechler v. Wilson, 82 Tex. 638; Quin v. Brady, 8 W. & S. (Pa.) 139; Ramsey v. Monroe, 3 Sneed (Tenn.) 329; Dreer v. Carscaden, 48 Pa. St. 38; 4 Am. & Eng. Ency of Law, 793.

4 Am. & Eng. Ency. of Law, 805, and authorities cited, and, if a line is called for in a description as running from a known

point to some natural monument, even without specifying the course and distance, the shortest line that can be drawn between the two points must be taken to have been intended. 4 Am. & Eng. Ency: of Law, 806; Bradley v. Wilson, 58 Me. 360; Van Gordan v. Jackson, 5 Johns. (N. Y.) 440; Hicks v. Coleman, 25 Cal. 142; Bradford v. McClelland, Hughes, (Ky.) 195; Smith v. Grimes, Hughes (Ky.) 35; Calk v. Stribling, 1 Bibb. (Ky.) 123.

"Where a creek is called for in a deed as the terminus of a line, and there is no diverging course and no particular object in the creek called for, it must be reached by the shortest direct line. Caraway v. Chancy, 6 Jones L. (N. Car.) 364.

A line should not be deflected except in order to conform with the intention of the parties.

4 Am. & Eng. Ency of Law, 807, and the cases cited, and, if possible, a line should be construed to be a continuous line. Id. Grand County v. Larimer County, 9 Colo. 268; Dawes v. Prentice, 16 Pick. 435; Vance v. Marshall, 3 Bibb. (Ky.) 261; Preston v. Bowman, 2 Bibb. (Ky.) 497; Rockwell v. Adams, 6 Wend. (N. Y.) 465; Gallatin Turnpike Co. v. State, 16 Lea. (Tenn.) 36; George v. Thomas, 16 Tex. 74.

"A boundary line marked part of the way will be continued in the same direction for the full distance, unless there be some marked corner or natural object found on the ground to direct or deflect it." Thornberry v. Churchill, 16 Am. Dec. 125; Hanson v. Township of Red Rock, 4 S. D. 365; Yocum v. Haskins, 81 Iowa, 436.

This act was passed after the adoption of the Constitution which provides that, "all changes in county boundaries in counties already organized, before taking effect, shall be submitted to the electors of the county or counties to be affected thereby at the next general election thereafter and be adopted by a majority of the votes cast in each county at such election. Counties now organized shall remain as they are unless changed according to the above provisions." Sec. 1, Art. 9, Constitution.

The appellants also cite the court, for its consideration as to the boundaries of Lyman and Presho counties, Laws, 1891, page 101. We are not aware what this act is cited for, as the court

will readily see that the act has no force and effect as far as Stanley county is concerned.

This particular tract of land in dispute has always been since 1883 considered as in Stanley county. The United States authorities have so considered it; the maps compiled by the United States have included it within the boundaries of Stanley county; the maps compiled by and under the state authorities have so given it as well as all of the standard map makers of the country, and it has always been considered and treated as being in Stanley county. The exact boundary line as given by the Legislature, and voted on by the people, can be and is determined.

WHITING, J. [1] But one question is presented upon this appeal, and that is whether certain land involved in this action lies within Lyman or within Stanley county. The trial court held that it lies within Stanley county. Whether or not such decision is correct depends upon the true location of that part of the boundary line between said counties extending from the Missouri river west a distance of some 23 miles to a line which was formerly the boundary line between the unorganized counties of Pratt and Presho. This last-mentioned line coincides with what would be the range line on the west side of range 79 of the fifth principal meridian survey. The location of this line is to be determined solely from the construction that should be placed upon the wording of two certain acts passed in 1897 (Laws 1897, cc. 41 and 45), by which acts new boundary lines for Stanley and Lyman counties were submitted to the approval of the voters of said counties. It is conceded that such lines were approved by the votes of the electors of said counties. In describing the boundary line where Stanley joins Lyman on the west, the acts provide that, from a point on the White river where said river intersects the township line between ranges 25 and 26 east of the Black Hills meridian, such boundary line should extend north along said township line to the intersection with the township line between townships 2 and 3 north of the Black Hills meridian survey base line. The acts then provide that the boundary line between Stanley county on the north and Lyman county on the south shall extend from said point of intersection, "thence east along said township line to the center of the main channel of the Missouri river." As a matter of fact, the survey known as the Black Hills

meridian survey did not extend along this line between townships 2 and 3 as far as the Missouri river, but did extend some 34 miles east to the line where the Black Hills meridian survey meets the fifth principal meridian survey, the same being the range line on the west side of range 79 of the fifth principal meridian survey, or, as heretofore mentioned, the west boundary line of the old unorganized county of Presho. The trial court found, and it is the contention of respondent, that from this point on the west side of said range 79 the line between townships 2 and 3 of the Black Hills meridian survey was, under the provisions of said Acts of 1897, projected straight east to the Missouri river, and became the boundary line between said counties. It is the claim of the appellant that, at the point where this line between townships 2 and 3 of the Black Hills meridian survey intersects the range line on the west side of range 79 of the fifth principal meridian survey, the boundary line, as fixed by the Acts of 1897, runs following such range line for a distance of about 1 7-8 miles until it reaches the north boundary line of township 108, range 79 of the fifth principal meridian survey, and from that point along the north line of township 108 to the Missouri river. In other words, it is the contention of respondent that the word "east," as used in the quoted part of the Laws of 1897, controls, and that, from where the Black Hills meridian survey ends, the line between said townships 2 and 3 should be projected east, regardless of the fact that it would not then follow any township line or even any section line or other survey line; while it is the contention of respondent that the words "said township line" should control, and that, from said point where the line between said townships 2 and 3 intersects the range line on the west side of range 79 of the fifth principal meridian survey, the line should deflect to the nearest township line running east thereof, which is the township line above mentioned on the north line of township 108 fifth principal meridian survey.

It is well to refer briefly to the history of the boundary lines of the various counties in which the lines in dispute have at different times been located. The Legislature of 1873 defined the boundary line of the unorganized counties of Pratt, Presho, and Stanley, and, as then defined, Bad river formed the boundary line between Stanley county on the north and Pratt county on the

south. Presho county took in that part of the territory north of the Bad river and west of the Missouri which lays to the east of the range line on the west side of range 79 of the fifth principal meridian survey, which range line extended south and formed the boundary line between Presho and Pratt counties. It must be understood that at this time there had been no survey of these counties, and in naming such range line it was merely understood as located where such line would be located whenever such fifth principal meridian survey should be extended over such territory. In 1874 the south boundary line of Stanley county was so changed as to follow the Bad river to its mouth. In 1883 an act was passed by which the south line of Stanley county, being the boundary line between Stanley county on the north and Pratt and Presho counties on the south, was changed to a line south of Bad river described as a line "48 miles north of the tenth standard parallel, based upon the sixth principal meridian survey." Part of the territory south of this state and west of the Missouri river is comprised in what is known as the "sixth prinicpal meridian survey," and this survey was eventually continued up into this state to the White river, but west of the range line on the west side of range 79 of the fifth principal meridian survey. This tenth standard parallel above mentioned was never laid across any part of the territory east of said range 79; the territory east of said range within this state being comprised in the fifth principal meridian survey which used, as its base line, Minnesota's south boundary line projected. A line 48 miles north of the tenth standard parallel, owing to the variation between the township lines in the sixth principal meridian survey and those in the Black Hills meridian survey, does not coincide with the township line as afterwards established between townships 2 and 3 of the Black Hills meridian survey, but lies about 40 rods north thereof. Neither would a line 48 miles north of the base line of the fifth principal meridian survey coincide with said township line between said townships 2 and 3 of the Black Hills meridian survey, providing such township line were projected to the Missouri river, but such a line 48 miles north of such base line would exactly coincide with the line between townships 108 and 109 of the fifth principal meridian survey, the line contended for by the appellant herein.

[2] The county of Stanley was organized in the year 1889, and in the Constitution of the new state of South Dakota there was a provision that the county lines of an organized county could not be changed without the vote of the people thereof. It follows that any legislation thereafter, purporting to define the boundary lines of Stanley county, was of no force and effect except when ratified by the voters of said county. Such legislation may, however, be resorted to to ascertain what was the understanding of the people in relation to the then existing boundary line of such county. In the year 1891 the county of Presho was still unorganized, and the Legislature of that year passed an act changing its boundary lines. It must be presumed that the Legislature understood that it had no authority to change the boundary line between that county and Stanley county without submitting the same to a vote of the people of Stanley county, and therefore it must be presumed that, in describing the boundary line between Presho and Stanley counties, the Legislature intended to describe such boundary line as it then existed as the act did not provide for a submission thereof to the people of Stanley county. The said act of 1891 named as the north boundary of Presho county the township line between townships 108 and 109, which, as we have noted, is the line claimed by appellant, and is a line 48 miles north of the base line of the fifth principal meridian survey. As a matter of fact, the township line between townships 108 and 109 of the fifth principal meridian survey was not surveyed west of the Missouri river until 1893, which survey was approved in 1894. In 1883 the Legislature seemed to have presumed that the territory west of the Missouri in Presho and Pratt counties would eventually be surveyed under the sixth principal meridian survey, while in 1891 it was understood that Presho county would be included in the fifth principal meridian survey, and, at that time, it was probably supposed that the township lines in these two surveys would coincide where such surveys joined, and it was undoubtedly presumed that the tenth standard parallel of the sixth principal meridian survey would coincide with and be a projection of the base line of the fifth principal meridian survey whenever such surveys met; or, in other words, the Legislature undoubtedly supposed it was making no change in said boundary line.

From what we have said above it seems clear that the several

Legislatures, when passing the 1883, 1891, and 1897 Acts, and the voters in ratifying the Acts of 1897, intended that the south boundary line of Stanley county should follow a township line. We also believe that it is a fair inference that it was presumed, by the members of the Legislature and by said voters, that the several surveys coincided, and that, therefore, the township line between townships 2 and 3 of the Black Hills meridian survey, if projected, would follow the line between townships 108 and 109 of the fifth principal meridian survey. A boundary line as described in the Laws of 1897 could not exist. It either could not run "east  *  *  * to the Missouri river," or else it could not run on a "township line to the Missouri river." We are of the opinion that, taking everything into consideration, we should hold that it was the intent of the legislators and voters that the line beween the said counties should follow a township line, and that, therefore, we should hold that such boundary follows the line claimed by appellant.

It follows that the land involved in this suit lies in Lyman county. The judgment of the circuit court is reversed, and the cause remanded to such court for further procedure in accordance with this opinion.