[Civil No. 1939. Filed January 12, 1924.]

[221 Pac. 837.]

## NAVAJO COUNTY, Plaintiff, v. APACHE COUNTY, Defendant.

1. COUNTIES — BOUNDARY DETERMINED. — Where a north and south range line, declared by statute to be the boundary line of a county, was not at the time surveyed its full length to the south, but stopped at a particular parallel, the county was not warranted in taking as its boundary a course due south from the terminus of the range survey, rather than the true range line which when surveyed and corrected commenced its course south

from the parallel at a point some distance from the terminus of the previous survey.

2. COUNTIES—LEGISLATURE HAVING SELECTED ONE METHOD OF FIXING BOUNDARY PRESUMED TO HAVE REJECTED OTHERS. — The legislature, having selected one method of fixing a county boundary, must be presumed to have definitely rejected others.

3. PUBLIC LANDS—RANGE LINES NOT OFFICIAL BOUNDARIES UNTIL ESTABLISHED BY GOVERNMENT SURVEY.—Range lines cannot become official and recognized boundaries of public lands until such boundaries have been established by a government survey.

Original action to determine a boundary. Complaint dismissed.

Messrs. Clark & Clark, Mr. Thorwald Larson, County Attorney, and Mr. Thomas R. Greer, for Plaintiff.

Mr. C. B. Wilson, and Mr. Levi Udall, County Attorney, Mr. Gilbert E. Greer, on the brief, for Defendant.

LYMAN, J.—Navajo county makes complaint that Apache county, which joins it on the east, is asserting dominion over a narrow strip of land, based upon a false boundary line, a line not in accordance with the provisions of the statute defining the limits of the two counties. The line dividing the two counties commences at the northern boundary of the state, and for a distance of a hundred miles or more extends due south along the 110th degree of longitude, then departing from it for a few miles to the west, and for the remaining distance, another hundred miles or more, follows what is described in the statute as a "range line." The phrase of the statute describing this line from the point where it departs from the line of longitude is as follows:

2.   See 25 R. C. L. 961.
       See 15 C. J. 397, 399; 32 Cyc. 803.

"Thence east to a point intersecting ranges 23 and 24 east of Gila and Salt River Meridian; thence south along said range line to its intersection with the northern boundary of Graham county." Revised Statutes of Arizona, Civ. Code 1913, par. 2375 (Session Laws of Arizona Territory 1895, No. 60).

The boundary between the two counties throughout its entire extent is designated by an imaginary line, no part of it by natural barriers. At every point its location must be determined by mathematical calculation before it can be marked upon the ground or made visible to the eye. When this line was defined by the act of the legislature (1895) in carving the county of Navajo out of what had been formerly all Apache county, this common boundary appears to have been surveyed and marked by monuments throughout its whole course from the north boundary of the state, southerly down to the second standard parallel north. South of that point, and for a distance of 60 or 70 miles down to its southern terminus at the northern boundary of Graham county, it was unsurveyed. Nearly all of this unsurveyed portion of the boundary is within the limits of the Apache Indian Reservation. No part of this portion was surveyed, and therefore not marked on the ground, until 1909, when a survey commencing at the second standard parallel north, where the old line ended, was made of the line down to the boundary of the Apache Indian Reservation. No dispute appears to have arisen as to the location of this line until long after that survey had been made.

The claim of Apache county to the disputed territory is based upon the line fixed by that survey, which was made by the federal government, and establishes the range line between townships 23 and 24, lying south of the second parallel north. Instead of carrying the line due south from the terminus of the old survey, the government surveyors commenced at a point on that parallel 2,994.42 feet due west of the old

terminus, and thence extended the line south. Navajo county asserts that the boundary south of the second standard parallel north should extend due south from the terminus of the old survey, and not along the range line, as that range line was determined by a survey made subsequent to the enactment of the legislature defining the boundary. Between these two lines lies the disputed territory. The statute uses the term "range line" in defining this line.

Range lines do not, throughout their whole extent, continue in an unbroken course, but at each standard parallel shift slightly to the east or west, and then follow the new course to the next standard parallel, where another correction is made, shifting it to the east or west, and the new course so corrected extends on to the next standard parallel, and so on throughout the course. That part of the boundary between the two counties extending along the range line, which had been surveyed prior to the act creating Navajo county, followed that rule, and at each standard parallel, the line shifted to the east or west a slight distance. It is not claimed by Navajo county that this surveyed portion of the range lines should extend due north and south without deviations or jogs, but admits that it should follow the survey in its deviations from a due north and south course at each standard parallel. It is claimed, however, that where no survey had been made prior to the statutory definition of the line, it was then impossible to know where the range line would be located, and that therefore, in order to make the line definite and certain, it must do the next best thing, take a course due south, however far such course might depart from the range line.

When the legislature enacted this statute, it did so with the knowledge that south of the second parallel north of the line which it designated was unsurveyed. It could have defined the line as running due south from the terminus of the old survey, or, as it did do,

designate it as the range line between townships 23 and 24. A course laid out by one of these methods would not be identical with a course laid out by the other one. The legislature, having selected one method of fixing the boundary, must be presumed to have definitely rejected all others. Having adopted one method, courts will not arbitrarily say that the legislature meant to adopt a means which it definitely rejected. Nor has any tenable ground been suggested for rejecting the plain language of the statute, and assuming that the legislature intended, though it did not say, something entirely different. The fact that this part of the boundary was unsurveyed, furnishes no reason for completing the survey due south, rather than completing it along the range line, as the legislature directed. An unsurveyed line extending due south is no more certain nor enlightening and affords no more direction to the tax collector and the sheriff than an unsurveyed range line.

There are obvious economic reasons for fixing the boundary at the range line, rather than upon a line run by the points of the compass. The one divides the counties along the section lines; the other would divide the sections, leaving a fraction of one section in one county, and the other fraction in the other county.

It does not appear that there is any more difficulty in surveying the course by one method than another. However, the ease or the difficulty incident to the establishment of a given line provided by statute is of no consequence. There is no rule which permits the acts of the legislature to be disregarded if difficult to carry out, and the substitution of some easy method in the place of the more difficult one, which the legislature has provided.

Yuma county once complained that Maricopa county was asserting a right to territory not belonging to it, and assuming to set up a boundary between the two

counties not in accordance with the statutory line, which designated a certain longitude as the dividing line between the two counties. Yuma county showed that, although the two counties had collaborated in having the line surveyed, and had fixed monuments in accordance with the findings of such survey, as a matter of fact the survey was wrong, and the monuments did not correspond with the terms of the statute. This court determined that, although the line then claimed by Maricopa county had long been in use and mutually acquiesced in, that it was not in strict accord with the terms of the statute, and that Yuma county was entitled to have a line established by survey and monuments which did conform to such terms. Applying the principle of that case to the present dispute, it is clear that the counties interested are entitled to have their boundary marked in accordance with the letter of the statute. *Yuma County* v. *Maricopa County,* 19 Ariz. 475, 172 Pac. 276; *Collins* v. *Lyman County,* 30 S. D. 104, 137 N. W. 600.

Range lines cannot become the official and recognized boundaries of public lands by the United States until such boundaries have been established by a government survey; but that fact does not mean that any surveyor not officially appointed by the government could not locate the range line with the same mathematical certainty as it would be located by a surveyor appointed by the government. Whether or not the United States government would, at the request of either or both disputants, accommodatingly at its own expense establish this line, is of no consequence.

So far as the record in this case discloses, no attempt had been made by either of the parties to lay out or mark on the ground that portion of the statutory line of division not yet surveyed, and, until that is done, and efforts in that direction have failed, no legitimate ground of dispute exists between them. Whenever the line is accurately marked upon the

ground as defined by the statute as range line dividing townships 23 and 24, whether surveyed by the federal government or otherwise, whether before or after the legislature defined the boundary, it thereupon becomes the dividing line between these two counties. Manifestly the legislature meant what it said, and when the parties to this suit, or either of them, wish to find out where the designated range line is located upon the ground, it can be done with a reasonable degree of certainty.

The complaint, based upon an untenable construction of the statute, is dismissed.

M.cALISTER, C. J., and ROSS, J., concur.