SMITH, Administrator, Respondent, *v.* WHITNEY, Appellant.

(No. 7,710.)

(Submitted November 12, 1937.  Decided November 23, 1937.)

[74 Pac. (2d) 450.]

524

*Mr. E. E. Fenton,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. F. F. Haynes,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to quiet title to certain lands acquired through tax deed proceedings. Findings of fact were made and filed in favor of the plaintiff. Judgment was entered in conformity therewith, and the appeal is from this judgment.

The lands to which the tax deeds were issued are all described as being in township 7 north, range 37 east. The government survey of the land in the southern portion of the township was made in 1879. The lands described in these deeds are all in sections 32, 33, and 34 of this township. In so far as the lands involved in this action are concerned, in the survey the boundary line of what would ordinarily have been the south line of the southerly tier of 40-acre subdivisions, and likewise which would have been the south boundary line of the township, was a meander line along the northerly shore of the Yellowstone River.

These tracts, which would have contained 40 acres, were, in accordance with the law and practice, designated as lots and contained varying acreages, but all of them were less than 40 acres in area. Subsequent to the time of this survey, and continuing down to the time of the commencement of this action, lands had gradually formed to the south of these lots in section 33, and the southwesterly lot in section 34 (being lot 4), amounting to an area of approximately 184 acres. All agree that this area of 184 acres was formed through the process of accretion. The entire controversy is waged over these accreted lands.

To the east and south of these accreted lands lies an island in the Yellowstone River known as Shorty Island, on which one Blackburn settled in 1920. No controversy exists over the title to this island. Soon after Blackburn built a cabin on these accreted lands and erected some fencing on them; he lived there, at least the major portion of the time, until 1934, when he conveyed to the defendant the tract of unsurveyed lands in the Yellowstone River known as Shorty Island, giving the township and range in which the land is located. No attempt was made in this conveyance to describe these accreted lands. Blackburn during his sojourn claimed title to the accreted lands. He never paid or offered to pay any taxes on them. Defendant Whitney asserts title to them as successor in interest of Blackburn. After the conveyance to him, defendant entered into possession of these accreted lands, built a house thereon, and

erected some fences approximately following the old meander line of the original survey.

The plaintiff obtained a tax deed in November, 1933, to the lands in section 33, and by a statutory court proceeding secured tax deeds to the lands in sections 32 and 34. After securing the tax deed to the lands in section 33, he commenced a quiet title action, describing these lands as against the true owner, one Pontius, and obtained a decree quieting title as to them. In all the various tax proceedings and the quiet title suit, the lands involved were described in conformity with the government survey. The assessment for taxes against these lands was made by describing them in accordance with this survey, and these lots were assessed as having the acreage reported by this survey. The government survey did not run the true south boundary township line of this township. These accreted lands extend across and beyond what would have been the south line of this township if it had been located. The lands across the river immediately south of this township were at the time of the survey a part of the Crow Indian Reservation. The defendant has disclaimed all interest in and to all of the lands within the government survey described in the various tax deeds, but asserts that he is the owner of the accreted lands.

At an appropriate time application was made to the district court under the provisions of section 2214, Revised Codes of 1935, to require the defendant to deposit the amount of the taxes and other sums provided for therein to be deposited in court for the use of the plaintiff in the event the defendant should prevail. The court did not require the defendant to make the deposit because of his disclaimer.

Defendant by his pleadings and on the proof makes the following contentions, supported by appropriate specifications of error: (1) That the tax deeds were void for certain defects in the proceedings leading up to their issuance; (2) that the tax deeds included in their description none of the accreted lands; (3) that, in any event, they did not and could not include any of the accreted lands lying south of the township line as projected; (4) that the tax decree in the tax deed pro-

ceedings and the quiet title suit had no binding force and effect upon defendant, since neither he nor his predecessors in interest were parties to them; and (5) that plaintiff's action was barred by sections 9015 and 9016, Revised Codes. Defendant by his answer sought no affirmative relief.

The plaintiff in a suit to quiet title must prevail, if at all, upon the strength of his own case, rather than upon the weakness of that of his adversary. (*Borgeson* v. *Tubb*, 54 Mont. 557, 172 Pac. 326.) Whatever the evidence may establish with reference to adverse possession on the part of the defendant, it is insufficient to prove title in the defendant by adverse possession, since neither the defendant nor his predecessor had ever, at any time or at all, paid taxes, or offered to pay taxes, on the accreted lands. (Sec. 9024, Rev. Codes; *Anderson* v. *Mace*, 99 Mont. 421, 45 Pac. (2d) 771; *Bearmouth Placer Co.* v. *Passerell*, 73 Mont. 306, 236 Pac. 673.) There is no contention made here that the so-called accreted lands are lands of any other character.

The general rule with reference to the ownership of accreted lands was stated by this court in *Bode* v. *Rollwitz*, 60 Mont. 481, 199 Pac. 688, 691, as follows: "Accreted lands— that is additions to the area of real estate from the gradual deposit by water of solid material, whether mud, sand, or sediment, producing dry land which before was covered by water, along the banks of a navigable or unnavigable stream—belong to the riparian owner." (See, also, sec. 6820, Rev. Codes.)

This court has said of the effect of meander lines in surveying fractional portions of public lands constituting boundaries, in the case of *Faucett* v. *Dewey Lumber Co.*, 82 Mont. 250, 266 Pac. 646, 648: "The general rule adopted by state and federal courts is that meander lines run in surveying fractional portions of the public lands bordering upon navigable bodies of water, are not run as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the lake or river, in order to ascertain the exact quantity of the upland to be charged for. The title of the grantee is not limited

528

to such meander lines; the waters themselves and not the meander lines constitute the real boundary.''

Unless excepted or reserved, accretions or the right thereto ▪ pass to a purchaser or a patentee although not described in the deed or other instrument of conveyance, if the conveyance describes the adjoining riparian land. (45 C. J. 571; *Haynie* v. *May*, 217 Iowa, 1233, 252 N. W. 749; *Tappendorff* v. *Downing*, 76 Cal. 169, 18 Pac. 247; *Topping* v. *Cohn*, 71 Neb. 559, 99 N. W. 372; *Minneapolis Trust Co.* v. *Eastman*, 47 Minn. 301, 50 N. W. 82, 930; *Cushenbery* v. *Brady*, 119 Kan. 478, 240 Pac. 400.)

Accreted lands are included in the assessment of lands described ▪ in accordance with the government survey, even though the assessment is limited by its terms to the number of acres specified in the government survey, and the tax deed purchaser acquires the same title, whether they are described or not, as he does to the upland adjoining described by the government survey. (*Towell* v. *Etter*, 69 Ark. 34, 59 S. W. 1096, 63 S. W. 53; *Crill* v. *Hudson*, 71 Ark. 390, 74 S. W. 299; *Mobbs* v. *Burrow*, 112 Ark. 134, 165 S. W. 269; see, also, *Jackson* v. *United States*, (C. C. A.) 56 Fed. (2d) 340.)

But it is argued by the defendant that, granting all the foregoing, ▪▪ no title to the portion of the accreted lands, which would lie in the next township south if the boundary line had been located, could pass by these tax deeds. The rules of survey of government lands are provided by section 751, Title 43, U. S. C. A., reading in part, as follows: ''The public lands shall be divided by north and south lines run according to the true meridian, and by others crossing them at right angles, so as to form townships of six miles square, unless where the line of an Indian reservation, or of tracts of land surveyed or patented prior to May 18, 1796, or the course of navigable rivers, may render this impracticable; and in that case this rule must be departed from no further than such particular circumstances require.'' And section 752 of the same title provides: ''And the boundary lines which have not been actually run and marked shall be ascertained, by running straight lines from the estab-

lished corners to the opposite corresponding corners; but in those portions of fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse, Indian boundary line, or other external boundary of such fractional township.''

Certified copies of the official plat as well as the field notes of the official government survey are in evidence before us. They disclose that the south boundary line of the township was never run by the survey, i. e., the true south line in order to make the township six miles square. It has been held that there can be no township on the public lands unless its boundaries have been actually surveyed and marked. (50 C. J. 909; *Powers* v. *Jackson,* 50 Cal. 429.) And range lines cannot become official and recognized boundaries of public lands until such boundaries have been established by a government survey. (45 C. J. 909; *Navajo County* v. *Apache County,* 26 Ariz. 74, 221 Pac. 837.) Therefore the south boundary line of the township in question has never been established so as to constitute a boundary line for the description of land. Accordingly, this contention of the defendant must fail.

The reasons why the defendant may not be heard to question the validity of the tax deed proceeding are twofold. First, he did not pay into court the amount of the taxes and other sums due in accordance with the provisions of section 2214, supra. He attempted to evade the statutes by asserting that no taxes had been levied or imposed upon these accreted lands. We have demonstrated that this position is untenable. The trial court should have required the deposit in compliance with the statute. Furthermore, no person may question the validity of a tax sale or deed unless he can first show that he, or those under whom he claims, had some title to the property at the time of the sale. (26 R. C. L. 446; *Goldsbury* v. *MacConnell,* 73 Colo. 351, 215 Pac. 872; *Hopper* v. *Chandler,* 183 Ark. 469, 36 S. W. (2d) 398.)

At no time, assuming that the defendant succeeded by the deed from Blackburn to any claim which the latter asserted to the

accreted lands, did Blackburn have any claim other than one by adverse possession, which was wholly insufficient, since he had never paid, nor offered at any time to pay, any taxes on the land claimed. This rendered his claim wholly inadequate as any foundation of title under our statutes and decisions cited supra.

Defendant has pleaded and asserts that the action was barred ▆▆▆ by sections 8015 and 9016. We have demonstrated that there were taxes levied against the accreted lands, which defendant never paid or offered to pay, and hence, under our statutes and decisions, no title by way of adverse possession arose in the defendant or his predecessor in interest. When plaintiff proved that he was the owner of the record title to these lands, he, in view of the provisions of section 9018, proved a prima facie case. (*Miner* v. *Cook,* 87 Mont. 500, 288 Pac. 1016.) The burden was then cast upon the defendant to prove title by adverse possession. (*Bearmouth Placer Co.* v. *Passerell,* supra.) To prove title by adverse possession, the defendant must prove that he paid the taxes. (Sec. 9024, and cases cited supra.) This he failed to do, hence he failed to overcome plaintiff's prima facie case. Reliance is based upon what is said in *Miner* v. *Cook,* supra, but there the question of payment of taxes was not discussed, and from anything appearing in the opinion it cannot be inferred what situation existed there with reference to payment of taxes. Accordingly, what was there said can in no way impinge upon the language of a positive statutory declaration.

The judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.

Rehearing denied December 17, 1937.