No. 14362

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

———————————

ALICE E. JACKSON et al.,

> Plaintiffs and Appellants,

-vs-

STATE OF MONTANA: HOLLY SUGAR CORPORATION, et al.,

> Defendants and Respondents.

———————————

Appeal from: District Court of the Seventh Judicial District,
Hon. L. C. Gulbrandson, Judge presiding.

Counsel of Record:

For Appellants:

Moses, Tolliver and Wright, Billings, Montana
Joel Guthals argued, Billings, Montana

For Respondents:

Habedank, Cumming & Best, Sidney, Montana
Otto Habedank argued, Sidney, Montana
David W. Woodgerd argued, Helena, Montana

———————————

Submitted: February 8, 1979

Decided: MAR 16 1979

Filed: MAR 16 1979

Thomas Jr. Kearney
——————————————————— Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a quiet title action involving certain land lying west of the Yellowstone River in Section 36, adjacent to Section 35, Township 23 North, Range 59 East, County of Richland, Montana. After a nonjury trial, the Honorable Leslie G. Gulbrandson entered a judgment for defendants. Plaintiffs appeal.

The diagram below is for illustrative purposes, assisting in the explanation of a complicated fact situation.



In 1923 Andrew Jackson, Sr., and his wife Alice began purchasing land in the S1/4 of Section 35, Township 23 North, Range 59 East, of Richland County. During the next 15 years they acquired 240 deeded acres in Section 35. In 1933 they acquired, by quiet claim deed, a piece of property, hereinafter referred to as the "Meadors Property," located in the southeast corner of Section 35. Immediately north of the Jacksons' property in Section 35 are two lots now known as the "Steinbeisser Property."

When the Jacksons acquired the Meadors Property, the Yellowstone River, at high water, overlapped the Steinbeisser Property and crossed at a diagonal into the Meadors Property. At this time only a small corner, Lot 2, was high and dry. This lot was leased to the Jacksons by the State of Montana. Since 1933 the Yellowstone River has gradually moved east, exposing land in Section 35, filling in the Meadors Property to the section line, and exposing land in Section 36 which adjoins the eastern section line of Section 35. By 1976, a survey indicated that land created by the eastward movement of the river totals some 171 acres in Section 36. As the river moved eastward and more land became usable, the Jacksons fenced the area and began farming it. It is the title to this "accreted" land that is in dispute.

The lease between the Jacksons and the State of Montana was renewed every ten years. It was modified in 1951 to show that the Jacksons had become a business entity known as Andrew Jackson and Sons. In 1961 the description of the lands was changed from the five acres of Lot 2 to 153 acres described as Lot 2 and all the land west of the Yellowstone

River in Section 36. The Jacksons signed the lease but allege that they continued to pay taxes on the same.

Section 36 belongs to the State of Montana. It is set aside for public education and is administered by the Montana Department of State Lands. In 1931 the Jacksons began leasing Lot 2, Section 36, from the State. As the years passed, they renewed the lease, including the lands that were accreting. The Jacksons argue that except for Lot 2, all the land that accreted in Section 36 belongs to them since they were the owners of adjoining property in Section 35.

In 1963 Andrew Jackson, Sr., died. In the distribution of his estate no mention was made of the accreted land now claimed, although Alice Jackson testified it was discussed with their attorney. The property was distributed by sections and lots according to the county records.

In 1964 the Jackson heirs conveyed Section 35 and Lot 5, Section 25, to Andrew Jackson, Jr., and his wife Marjorie. No mention was made to the accreted lands although Andrew, Jr., and his mother continued to run cattle on the land east of the section line to the river.

In 1964 the description of the land along the river was changed by the county assessor, and the Jacksons were taxed for three lots and 65 acres along the river. No protest was made as to the payment of these taxes.

In 1974, following Andrew, Jr.'s death, his wife Marjorie conveyed the property which had been sold to her and Andrew, Jr., to the Holly Sugar Corporation (Holly Sugar). The land was advertised as including accretions only to Lot 5 in Section 25 and those filling in the remaining portion of the SE1/4 of Section 35. However, the contract for deed

-4-

to Holly Sugar, dated March 1974, gave the legal description of Lot 5 of Section 25 and the E1/2 SW1/4 and SE1/4 of Section 35 together with accretions of approximately 343.3 acres. The accreted land between the river bank and the eastern section line of Section 35 was not included in the conveyance to Holly Sugar. However, after the sale, the business entity of Andrew Jackson and Sons and Alice Jackson continued to utilize the property for farm purposes.

In 1975 Andrew Jackson and Sons began a quiet title action to determine who had the leasehold interest in Section 36. The court found the leasehold interest in favor of Andrew Jackson and Sons and against Holly Sugar. However, the court was not asked, nor did it determine, what land along the river constituted the leasehold or who owned that land. Thereafter, Holly Sugar demanded that Andrew Jackson and Sons move their fence to the section line and to conduct their activities only in Section 36. Jackson and Sons complied with this request.

At about the same time the Jacksons learned that Steinbeisser was claiming ownership to some of the accreted lands through the State of Montana. The Jacksons corresponded with the Attorney General of the State of Montana, and that office disclaimed any claim of title to the property by adverse possession even though the Department of Lands had been leasing the property for a number of years.

In May 1976 the State of Montana, Joseph Steinbeisser, and Holly Sugar entered into a boundary agreement dividing the accreted land into four tracts: A, B, C and D. Tract A corresponded to Lot 2, Section 36, originally leased to the Jacksons by the State plus accretions thereto. Tract B described the accreted land adjacent to the Steinbeisser

Property. Tracts C and D corresponded to the accreted land adjacent to the Meadors Property, now owned by Holly Sugar. This was done without the Jacksons' knowledge, and no public auction was held. On learning of the agreement, Jacksons brought an action to quiet title to the accreted land which had been divided up by the State, Holly Sugar, and Steinbeisser. The Jacksons did not claim title to Tract A, which they were leasing from the State, but claimed they owned the remaining tracts through adverse possession and accretion, having improved, utilized, and paid taxes on same.

The trial court in its findings of fact, conclusions of law and judgment found for defendants. Certain findings are important to our discussion and decision. They are:

"2. The Jacksons acquired, by Quit Claim Deed dated December 12, 1933, the E1/2 E1/2 of the SE1/4, Section 35, from John P. Meadors and Katheryn Meadors.

". . .

"4. The title to all lands previously owned by Joseph Steinbeisser, and the title to Tract B as described in boundary agreement recorded Book E-125, page 939 of the records of Richland County, Montana, which boundary agreement was entered into between Joseph Steinbeisser and the State of Montana acting through its Board of Land Commissioners, dated May 24, 1976, recorded Book E-125, page 939 of the records of Richland County, Montana, became vested in Joseph Steinbeisser and Christine Steinbeisser, husband and wife, as joint tenants, by virtue of ratification of boundary agreement dated May 12, 1977, filed May 12, 1977, and recorded in Book E-130, pages 506-507 of the Misc. records of Richland County, Montana.

"5. Joseph Steinbeisser at all times protested ownership by the State of Montana of that portion of the N1/2 of Section 36 West of the Yellowstone River lying South of Lot 2 of Section 36, which Lot had a river boundary of approximately 720 feet. He protested ownership of this land by the State of Montana on many occasions to the State Land Board, but at no time undertook legal proceedings to quiet title against the State of Montana, and the land attributable as accretion to his Lots 1 and 2 was by the boundary agreement,

consolidated into what is now Tract B of the plat attached to the boundary agreement hereinbefore referred to. Said accreted land has never been specifically described as being lands within Section 36 on the tax records of Richland County, and Joseph Steinbeisser has paid all taxes levied and assessed against said Lots 1 and 2 of Section 35. No taxes have been paid by any party to this action on lands described as being within Section 36, Township 23 North, Range 59 East.

"6. Insofar as the claim of Joseph Steinbeisser is concerned, the land situated within Section 36 and enclosed within a fence constructed by Andrew Jackson was held adversely by Jacksons only as a Lessee of the State of Montana, and Jacksons never, at any time, made any public claim to this land except as a Lessee of the State of Montana.

"7. Albert Jackson and his successors-in-interest have claimed the right to fence, use and control, the lands in Section 36 West of the Yellowstone River under consecutive leases of State lands, commencing February 28, 1951, and at no time until the commencement of this action, have contested the ownership of all lands involved in this case in Section 36, by the State of Montana.

"8. The tax records covering payment of taxes by Andrew Jackson and his successors-in-interest, specifically limit taxes levied to lands within Section 35, and the payment of taxes on the lands as assessed in Section 35, does not include any of the acreage in Section 36 West of the Yellowstone River. Ownership, if any, on the part of the plaintiffs, results from plaintiffs being heirs-at-law and surviving next of kin of Andrew Jackson, Sr. No acreage situated within Section 36 was included in the Inventory and Appraisal dated June 19, 1963, filed in the probate of the Estate of Andrew Jackson, Sr., in the above-entitled Court. The Inventory and Appraisal was signed and sworn to by Alice E. Jackson as containing a true statement of all of the estate of said deceased which has come to the knowledge and possession of said Alice E. Jackson, and was filed with the State of Montana as a basis for determination of inheritance taxes. Andrew W. Jackson, Jr., and his wife, Marjorie Ann Jackson, now Marjorie Ann Carter, except for minerals reserved in and under the lands owned by Andrew W. Jackson, Jr., are the successors-in-interest of all lands which were owned by Andrew Jackson, Sr., and his widow, Alice E. Jackson, said properties having been purchased for the sum of $40,000.00 under a Contract for Deed between all of the plaintiffs other than Marjorie Ann Jackson as Sellers, and Andrew W. Jackson, Jr., and Marjorie Ann Jackson as Purchasers, as joint tenants with right of

survivorship. This Contract for Deed is dated January 14, 1964, filed May 7, 1965, recorded Book A-98, page 38 of the records of County Recorder of Richland County. Warranty Deed executed pursuant to said Contract and dated February 1, 1965, was delivered and filed January 7, 1974, and recorded Book A-110, page 210 of the records of Richland County, Montana.

". . .

"10. Marjorie Ann Carter as plaintiff, brought an action to quiet title to the State Grazing Leases standing of record in the name of Andrew Jackson and Sons, being Case No. 10785 of the records of this Court. Defendants proof resulted in entry of Findings of Fact, Conclusions of Law, and Judgment of this Court dated March 27, 1975, and in which the Court made the following Finding of Fact:

"'5. That the "home" place of the Jackson family consisting of lands other than the aforesaid State lands, was sold to Andrew Jackson, Jr., on or about January 14, 1964, but the land owned by the State of Montana described in Paragraph 2 above was not included in the sale to Andrew Jackson, Jr.' (emphasis added)"

Seven issues are presented on appeal:

1. Whether the disputed land was formed by accretion requiring the law of accretion to be applied in determining its ownership.

2. Whether under the law of accretion the land belongs to appellants.

3. Whether appellants acquired the accreted land ajacent to the Steinbeisser Property by adverse possession.

4. Whether the State lease bars appellants' claims to the land.

5. Whether the doctrine of laches bars appellants' claims to the property.

6. Whether the State's claim is barred by the disclaimer of interest.

7. Whether the State's claim is barred by the statute of limitations.

-8-

For the purposes of this opinion, we will combine certain issues in our discussion.

It is agreed by the parties that the trial court properly found that the law of accretion applied and must therefore be followed in determining ownership. They disagree as to the law in Montana, however. Appellants argue that this Court should enlarge our holding in Smith v. Whitney (1937), 105 Mont. 523, 74 P.2d 450, the prevailing law on accretion. In Smith we held that, "Unless excepted or reserved, accretions or the right thereto pass to a purchaser or a patentee although not described in the deed or other instrument of conveyance, if the conveyance describes the adjoining riparian land. (Citations omitted.)" 105 Mont. at 528. This principle of retention by a seller of accreted land specifically by reservation in the deed has been the law of this State.

Appellants ask us to consider significant a grantor's failure to include any accreted land in the legal description of the land he conveys, citing Jones v. Johnston (1855), 59 U.S. 150, 15 L.ed. 320; Jefferis v. East Omaha Land Co. (1890), 134 U.S. 178, 10 S.Ct. 518, 33 L.ed. 872; and Stevens v. Arnold (1923), 262 U.S. 266, 43 S.Ct. 567, 67 L.ed. 965. See also 78 Am Jur 2d, Water, §414.

We find our holding in Smith v. Whitney, supra, controls here and that accreted lands pass with the riparian upland property unless excepted or reserved. Therefore, the Jacksons, by their conveyances in 1964 and 1974, which did not except or reserve any accretions in Section 36, conveyed the accretions to Andrew Jackson, Jr., and his wife Marjorie, who then conveyed them to Holly Sugar. The 1976 boundary agreement and quit claim deed then conveyed Tract D to the State of Montana.

We next address appellants' claim of acquiring accreted land by adverse possession. To obtain adverse possession of accreted land in Montana, where the adverse claim is not founded on a written instrument, the claimant must occupy, improve, enclose, and pay taxes on the property in question for a period of not less than five years in a hostile and continuous manner. Townsend v. Koukol (1966), 148 Mont. 1, 416 P.2d 532. Here, appellants do not meet the requirements. Their claim of hostile possession, by keeping Steinbeisser off the property, was based on the fact they leased the property from the State. The hostile and continuous occupancy of the land in Section 36 must also fail for there was no proof of taxes paid, although the Jacksons claim that they thought they were paying taxes. Section 36 is tax exempt school trust land and no taxes are paid on such land. These school trust lands are leased to help raise school funds.

Appellants raise the question of whether the State lease bars their claims. The District Court held that it did, and we agree. Section 93-2512, R.C.M. 1947, now section 70-19-412 MCA, provides that possession of a tenant is deemed possession of the landlord. Here, the uncontradicted testimony of Steinbeisser is that the Jacksons relied on the lease to keep him off the land. Too, the lease clearly stated that it covered all land west of the Yellowstone River in Section 36. Further, in the lawsuit against Holly Sugar in 1975, they defended their ownership of the lease in Section 36 against Holly Sugar. The Court ruled that they were the owners of the lease.

We next direct our consideration to whether laches bars the Jacksons' claims. From 1961, when the lease was rewritten

to cover the added acreage on the west bank of the river in Section 36, the Jacksons have accepted the terms of the lease and have not notified the State of any adverse claims against the State. The trial court found it would be inequitable to claim property they have continuously leased for 15 years without notifying the lessor that they claimed ownership of the property. We agree with the trial court in applying the doctrine of laches to the facts here.

We held in Montgomery v. Bank of Dillon (1943), 114 Mont. 395, 408-09, 136 P.2d 760, quoting from Riley v. Blacker (1915), 51 Mont. 364, 370, 152 P. 758, 759:

> ". . . '"Equity aids only the vigilant;" and it [laches] exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted claim inequitable.' . . ."

Next raised is whether the State of Montana's claim is barred by the disclaimer of interest by the State Department of Revenue. The disclaimer of interest was filed by an attorney in the Department of Revenue. The disclaimer was intended to indicate that no taxes were owed on the land. It was never signed. The State was allowed to amend its pleadings under Rule 15, M.R.Civ.P., to withdraw the consent due to mistake. No default of the State was entered. The waiver was not given appellants prior to this action. There was no showing made that they were misled into believing the State had no interest in their action. The applications to withdraw the disclaimer and file an answer was made long before trial. The trial judge properly decided this issue in favor of the State.

The final issue raised is whether the State of Montana's claim is barred by the statute of limitations. The State gained ownership to Tract D through the 1976 boundary agree-

ment and quit claim deed from Holly Sugar. The trial court correctly found that section 93-2501, R.C.M. 1947, now section 70-19-302 MCA, did not apply to this claim.

The District Court's award of the property according to the 1976 boundary agreement is affirmed.

_____
                                    Justice

We concur:

_____
        Chief Justice

_____

_____
        Justices

Mr. Justice John C. Sheehy specially concurring:

Under Section 14, 1867 Organic Act, the United States entrusted every tract numbered Section 16 or 36 inviolable from any tricks by deed or ruse, lawless or statutory, when it created the Montana Territory.

Likewise, our Enabling Act states in Section 10 and 11, for education of our children, the same tracts shall not be conveyed, deeded or lost, unless the permanent school fund gets full market cost.

Our duty then is to guard against depletion of trusted lands by any means, and that includes accretion.  Here the result is just by reason of the trade completed by the state which cannot be unmade.

I concur in the result.

_____
                John C. Sheehy
                Justice

-13-