No. 87-221

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

ERNEST FILLER AND IRENE FILLER,
husband and wife,

        Plaintiffs and Appellants,

-vs-

JERRY McDANIEL and MARJORIE A.
McDANIEL, husband and wife,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Christine Cooke-Dosen argued, Hardin, Montana

    For Respondent:

        Ryan Willett argued, Billings, Montana

---

Submitted:    December 8, 1987

Decided:    December 31, 1987

Filed:    DEC 31 1987

*Ethel M. Harrison*

---

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The plaintiff-appellants, Ernest and Irene Filler, appeal a District Court judgment from the Sixteenth Judicial District, County of Rosebud. The judgment determined that defendant-appellants, Jerry and Marjorie McDaniel are the proper owners of a parcel of real property located in Rosebud County, Montana. We reverse and remand.

On December 16, 1983 Ernest and Irene Filler purchased 140 acres of real property from defendant-appellants William and Charlotte Bell. The conveyance described the land as follows:

> The East Half of the East Half (E½ E½) of Section Eleven (11), Township Six (6) North, of Range Thirty-nine (39) East, M.P.M. [Minus twenty acres previously sold by the Bells which is not relevant to this action.]

The property in dispute lies to the south of the above described property and constitutes 16.008 acres. The land was formed due to a gradual change in the course of the Yellowstone River and the Fillers contend they took title to the land when they purchased the 140 acres from the Bells.

The roots of this dispute were first formed with a United States Government survey in 1879. That survey shows that in 1879 the land south of that purchased by the Fillers was covered by the Yellowstone River. At that particular time, the north waterline of the Yellowstone also extended to a small portion of the southeast corner of the land purchased by the Fillers--the East Half of the East Half of Section 11. Due to the natural forces of nature, the north waterline of the Yellowstone is now much further to the south. The result

2

is that additional dryland now appears to the north of the Yellowstone.

The Bells purchased a significant amount of land in 1980 which included the land involved in this dispute. The notice of purchaser's interest described the property as follows:

Township 6 North, Range 39 East, MPM, Rosebud County, MT

Sec. 11: Lot 1, NE¼SE¼, E½NE¼
Sec. 12: Lot 2, 3, & 4, That part of N½NW¼ lying southerly of Milwauke[e] Railroad right-of-way, S½NW¼, That part of SE¼SW¼ and SW¼SE¼ lying southerly of river channel.
Sec. 13: Lots 2, 3, 4, 6, 7, 8, & 9
Sec. 14: Lot 1

Together with all accreted lands and riparian rights.

The description specifically addresses accreted lands and the property is described in terms of "Lots." Lot 1 of section 11 is surveyed in the 1879 survey so as to include the north bank of the Yellowstone as its south boundary line. The Bells received rights to accreted land by the above conveyance. However, at trial the defendant's son, Conrad Bell, testified the Bell family believed the land south of Section 11 belonged to the Bureau of Land Management.

When the Fillers purchased land from the Bells in December of 1983, the parcel was described as the East Half of the East Half of Section 11, Township Six (6) North, of Range Thirty-nine (39) East, M.P.M. (minus 20 acres not involved in this case). The description does not address accreted lands and the description makes no reference to a "Lot 1" which would have the southern boundary as the Yellowstone. Although the description is set out as a

particular portion of land with all four boundaries ascertainable by section lines, the land as described would include all of Lot 1 as surveyed in 1879.

In June of 1984, the Bells sold a tract of land to the east of the Fillers' property to defendants Jerry and Marjorie McDaniel. Subsequently, a dispute arose as to the ownership of the land directly south of the Fillers' property and the Fillers attempted to fence the property. The fence allegedly strayed somewhat to the east and was removed by the McDaniels. A survey was conducted in September 1984 which concluded that due to the change in the course of the Yellowstone River, an additional 16.008 acres appeared between the north waterline of the Yellowstone and the south boundary of the Fillers' property. The Bells concluded that the accreted land belonged to them because they conveyed only a specific portion of land to the Fillers. The Bells then sold the 16.008 acres to the McDaniels.

The Fillers alleged their purchase included any accreted lands to the south and filed a quiet title action March 25, 1985. A bench trial was held February 19, 1987. The District Court concluded the Bells had not conveyed the accreted land to the Fillers and the McDaniels were the proper owners of the accreted land by virtue of their purchase from the Bells. Additionally, the District Court awarded defendants attorney's fees. The Fillers appeal and present two issues for review:

(1) Did the District Court commit error in determining that the McDaniels owned the parcel of property created by a shift in the course of the Yellowstone River?

(2) Did the District Court correctly award defendants attorney's fees?

4

Defendants contend that the Fillers were specifically conveyed only the land within the East Half of the East Half of Section 11, Township Six (6) North, or Range Thirty-nine (39) East, M.P.M. (minus twenty acres not involved in this case), and all boundaries of the land are readily determinable by section lines and according to this description. The conveyance to the Fillers made no description in terms of "Lots" or by using the river as a boundary. Defendants conclude that the Fillers only acquired an ownership interest on the land described in the conveyance and the 16.008 acres of additional land is not in that description.

The Fillers contend they are the proper owners of the land and that the District Court decision must be reversed according to the law of accretion. "Accreted lands" are "additions to the area of real estate from the gradual deposit, by water, of solid material, whether mud, sand, or sediment, producing dry land which before was covered by water . . . " Bode v. Rollwitz (1921), 60 Mont. 481, 491, 199 P. 688, 691. See also, 78 Am.Jur.2d Waters § 406 (1975). Expert testimony at trial indicated the property in dispute was created by accretion, and the District Court found that the land accreted to Lot 1. Additionally, neither party challenges the proposition that the land was created by accretion. Therefore, we conclude that the disputed property was created by the accretion process and that the law of accretion applies.

The Fillers explain that the evidence indicates that the 16.008 acres accreted to Lot 1 of Section 11 and that the District Court agreed with this in finding of fact number VI. Although they were not conveyed property described as "Lot 1," they were conveyed property which entirely encompassed

5

Lot 1. Stated differently, the 140 acres purchased includes the entire parcel of land designated as Lot 1 in the 1879 survey. When the property description includes a designation of Lot 1 it implies that the southern border to the land constitutes the north waterline of the Yellowstone because that is the boundary structure of the 1879 survey.

The Fillers state that the general rule regarding accreted land is that "[u]nless excepted or reserved, accretions or the right thereto pass to a purchaser or a patentee although not described in the deed or other instrument of conveyance, if the conveyance describes the adjoining riparian land." Smith v. Whitney (1937), 105 Mont. 523, 528, 74 P.2d 450, 453. Since the conveyance did not reserve accretions to the Bells and the described property completely encompasses what was described as "Lot 1," the Fillers conclude they purchased the accreted land along with their purchase of 140 acres. Therefore, the subsequent conveyance to the McDaniels is void because the Bells had already conveyed the property to the Fillers. The Fillers emphasize that the Bells made no reservation of accreted lands in the conveyance and that the Bells were not aware that the accretion process had created additional dryland.

The Fillers have correctly stated the general rule as set forth in the Smith case. A conveyance of riparian upland property includes all accreted lands unless excepted or reserved by the conveyance. This is and has been the applicable law regarding accretion in Montana. This rule is also addressed in § 70-18-201, MCA, which states:

> Where from natural causes land forms by
> imperceptible degrees upon the bank of a
> river or stream, navigable or not
> navigable, either by accumulation of
> material or by the recession of the
> stream, such land belongs to the owner of

6

the bank, subject to any existing right-of-way over the bank.

We considered a similar issue in Jackson v. State (1979), 181 Mont. 257, 593 P.2d 432. Jackson addressed the question of whether a contract for deed effectively conveyed accreted land when the deed described the conveyed property by sections. Although the deed description included accretions within the section line description, it did not contain any reference to additional accreted land outside the boundaries described. The deed did not reserve or except any additionally accreted lands. Appellants in Jackson argued that the accreted lands outside the section lines were not conveyed by the deed. This Court refused the appellants' argument and affirmed the holding in Smith by stating "accreted lands pass with the riparian upland property unless excepted or reserved." Smith, 181 Mont. at 266, 593 P.2d at 436.

We find that the Jackson case controls the current dispute. The conveyance from Mr. Bell to the Fillers did not except or reserve any accreted land. Therefore, title to any land which has accreted to that purchased by the Fillers passes to the Fillers. The subsequent sale from the Bells to the McDaniels is void.

The Fillers also appeal the award of attorney's fees to the defendants, the McDaniels and the Bells. Defendants based their claim for attorney's fees on a provision in the contract for deed between the Fillers and the Bells. That provision states that if "any litigation is necessary to enforce any provisions of this contract, then the successful party shall be entitled to all costs of suit and reasonable attorney's fees." Since the first issue is reversed, the award of attorney's fees must also be reversed.

7

Additionally, we note the McDaniels were not parties to the contract for deed and that a claim for attorney's fees by the McDaniels could not be based on that contract.

For the foregoing reasons, we reverse and remand to the District Court for entry of judgment in accordance with this opinion.

_John Conway Harrison_
Justice

We concur:

_Chief Justice_

_Justices_

8